[No. 4106.]

## THE CITY OF LEADVILLE v. THE CORONADO MINING COMPANY ET AL.

1. CITIES AND TOWNS—DEDICATION OF STREETS—EVIDENCE.

In an action by a city to recover the value of ore mined from under its streets where plaintiff offered in evidence a certified copy of a plat of an addition to the city, covering the streets in controversy, made by the owner of the land and filed with the county clerk, and offered the record of the proceedings of the city council to show that the council in regular session accepted the plat by the affirmative vote of eight out of twelve aldermen elected for the city, and offered to prove by the city clerk that the plat had been on file in the office of the city clerk but was lost and could not be found, and offered to prove that for many years and since the filing of said plat the city had exercised authority over the streets of the addition, as part of the streets of the city, it was error to reject such evidence as it tended to establish a statutory dedication of the streets in controversy and for that reason was admissible.

2. ESTOPPEL—EVIDENCE—PLEADING.

Where evidence tending to establish an estoppel *in pais* was offered

Vol. 29–2.

and rejected, the ruling of the court excluding such evidence cannot be sustained on the ground that the estoppel was not pleaded, where that objection was not made to the introduction of the evidence.

*Appeal from the District Court of Lake County.*

The complaint alleges: That Thomas Starr, was on August 17, 1880, the owner in fee of a certain portion of the Starr placer mining claim, in Lake county, Colorado, and on said day caused a portion of the premises so owned by him to be laid out, surveyed, and platted as the Stray Horse Addition to Leadville, and caused a map thereof to be made, designating thereon certain streets, avenues, alleys, and other places, for public use; that said map was, on September 28, 1880, submitted to, and duly accepted by the city council of Leadville, and that said plat was filed and recorded with the county clerk and recorder of Lake county. on the 8th of November, 1880; that on said 17th of August, 1880, said Thomas Starr duly executed, acknowledged, and delivered a deed of conveyance to the streets, alleys, and public places designated on said map.

Then follows a description of the streets, alleys, and public places on said map.

That immediately thereupon, the city of Leadville entered into the possession of the said streets and alleys, and expended large sums of money in grading and improving the same; that about the month of July, 1896, the defendant, The Coronado Mining Company did wrongfully and unlawfully and without the consent of plaintiff enter upon the streets, avenues, and alleys shown upon said plat, by means of certain underground levels, and began to excavate and did excavate and convert to its own use large quantities of iron, silver and lead bearing ores there-

from, of the value of $30,000.

That The Wolcott Mining Company purchased from Thomas Starr the premises described, and claims, notwithstanding the acts of Thomas Starr in dedicating and conveying the streets and alleys as aforesaid, that it is the owner of the premises and entitled to the mineral and ore beneath the surface; that The Coronado Mining Company is the lessee of The Wolcott Mining Company, and justifies its entry into the premises as such lessee; that the defendants wrongfully withhold the premises from plaintiff; and prays for a temporary injunction, and for damages in the sum of $30,000, and that the temporary injunction be made perpetual.

The answer admits that Thomas Starr was the owner of the property mentioned, and that he executed and acknowledged a pretended plat and conveyance as alleged in the complaint; admits that the defendant The Coronado Mining Company extracted ore from the property described in the complaint; admits that The Wolcott Company purchased the property described from Thomas Starr; admits that The Wolcott Company claims that it is the owner of, and entitled to the possession of the ore underneath said alleged streets and alleys; admits that The Coronado Mining Company is the lessee of The Wolcott Company and, as such, has extracted ores from the premises as charged in the complaint; and denies all the other allegations of the complaint. It alleges that the Coronado Company, as lessee of the Wolcott Company, has been in the open and notorious possession of the premises described in the complaint, with the knowledge of plaintiff, and that plaintiff has never protested until the filing of this suit; that the Wolcott Mining Company is the owner

and entitled to the possession of the ores beneath the surface of said premises; that the ores taken from said premises were taken at a depth of more than four hundred feet beneath the surface of the streets and alleys described, and that in excavating and mining they have not, will not, and do not, interfere with the free and full use of the surface.

The cause was tried to the court. Upon the trial, the plaintiff offered exhibit No. 1, purporting to be a plat executed by Thomas Starr to the premises described in the complaint. The defendants objected to the introduction of the plat: "Because said plat does not set forth all the streets, alleys, avenues, and highways and the width thereof; because said plat does not set forth all parks, squares, and all other grounds reserved for public use or any of them; because said plat does not set forth all or any lots and blocks, or boundaries, designating such lots and blocks by number, and does not give the dimensions and numbers of such lots claimed thereon; because said plat does not show the topography of the property described therein; because it does not appear from the evidence that the plat was approved by three-fourths of the members elected to the city council, prior to the time of its recording in the office of the clerk and recorder of the county of Lake or any other time. Because it appears from the evidence that the only map alleged to have been approved by the city council was alleged to have been approved at a date subsequent to the recording of said plat in the office of the county clerk and recorder; because it does not appear from the evidence that any plat alleged to have been approved by the city council was ever filed with the city clerk and recorder, as provided by law. Because it does not

appear that the alleged plat or any plat approved as required by law, was filed in the office of the county clerk and recorder. Said exhibit is further incompetent, irrelevant and·immaterial, for the reason that it does not tend to prove any issue in this case, for the reason that it does not grant or convey to the plaintiff the right to the ore-body or premises in question, or to mine the same, or to prevent the defendants from mining the same; and because it does not appear that the said territory was within the said city of Leadville, and because the city of Leadville has no power to take and hold mining property."

Plaintiff offered the record of the city council for the 28th of September, 1880, which shows that the council convened in regular session; that there were present the mayor and nine aldermen, and that three aldermen were absent; and that the plat of Stray Horse Addition was approved, eight aldermen voting for, and one against, the adoption of the plat.

Plaintiff offered to prove by William M. Clark that he was clerk of the city council from the 5th of August, 1879, to the year 1880, and that during that time, or a portion of that time, there was on file in the city clerk and recorder's office a plat or map know as the Stray Horse Addition to the city of Leadville, and that said map or plat was filed at the time when said Clark was city clerk and recorder. Counsel for the defendants admitted that Mr. Clark would so swear.

Plaintiff offered to prove by O. E. Mallory that he was, at the time of testifying, clerk of the city of Leadville, and had the custody of the records and files of the city of Leadville; that he had made deligent search throughout his office and at all other places where the plats of the city of Leadville would

be likely to be kept, and that he had failed to find any plats of the Stray Horse Addition to the city of Leadville, either similar to the one marked exhibit 1, or of any other kind or character.

Counsel for the defendants admitted that Mr. Mallory would so testify.

Plaintiff offered to prove by Jesse F. McDonald that he is a civil engineer, and at the time of testifying was mayor of the city of Leadville; that he is well acquainted with the tract commonly known as Stray Horse Addition to the city of Leadville, and that he knows of his own personal knowledge that for many years last past, and since 1880, the city has exercised authority over what purported to be the streets and alleys of said addition, in all respects as part of the plat of Leadville, in the same manner as all other additions have been treated by said city.

It was admitted by counsel for the defendants that Mr. McDonald would so testify.

From the certificate attached to said exhibit, it appears that it is a true and correct copy of the plat of Stray Horse Addition as the same appears of record in the office of the county clerk and recorder of Lake county in City and Village Plat, page 53.

The court sustained the objections to exhibit No. 1, granted a motion for non-suit, and gave judgment for defendants for costs.

From this judgment the plaintiff appeals.

Mr. T. A. Dickson, Mr. R. D. McLeod and Messrs. Patterson, Richardson & Hawkins for appellant.

Messrs. Teller & Dorsey, Mr. Anson Wolcott, Mr. John A. Ewing and Mr. Charles Cavender for appellees.

Mr. Justice Steele delivered the opinion of the court.

This controversy arises over the act of the The Coronado Mining Company, as lessee of The Wolcott Mining Company, in excavating under the streets and alleys of an alleged addition to the city of Leadville known as Stray Horse Addition to the city of Leadville, and extracting ore therefrom. The Wolcott Mining Company claims to be the owner of the fee in the streets and alleys of said addition through title from Thomas Starr, the original patentee of the Starr placer, U. S. Mineral Survey No. 255. The city contends that Thomas Starr, on the 17th of August, 1880, made a statutory dedication of the streets and alleys included within the said addition, and, at the same time, by his deed indorsed upon the map or plat conveyed to the city as public property the streets and alleys designated theron.

It is contended by the defendants, and was held by the trial court, that sections one and two of article eleven of chapter 84 of the Revised Statutes (R. S. '68, p. 618), and section 2648 of the General Laws (G. L. '77, p. 876, 2 Mills Ann. Stat. § 4373), were in force at the time of the filing of this plat, and constituted the statutory provisions concerning the filing of plats, and the annexing of contiguous territory to cities and incorporated towns.

For a proper discussion of the questions involved, it is necessary at the outset to determine whether or not sections one and two of article eleven of chapter 84 of the Revised Statutes (R. S. '68, p. 618) were repealed by the act of 1877. We are of opinion that the act of 1877 (G. L. '77, p. 876, 2 Mills Ann. Stat. § 4373) expressly repeals the article of the Revised Statutes referred to. An inspection of the statutes

shows that section 2648 down to the first proviso is, in substance, a re-enactment of section twelve of article eight of said chapter 84, and that the first proviso contains the requirements that such plat shall not be filed for record until approved by three-fourths of the members elected to the city council, and that it shall show the topography of the territory. This proviso also re-enacts, in substance, section six of said article eleven, repealed in 1870. The subject embraced by section five of said article eleven appears in the General Laws as section 2547. The general repealing clause of the act of 1877 is as follows: "All general laws providing for the organization and government of incorporated cities and towns in the state of Colorado are hereby repealed." Sections one and two of article eleven of chapter 84, which are in controversy, are sections concerning the organization of cities and towns as well as the annexation of additions thereto. They provide that whenever a city, town, or village, or any addition to a city, town, or village, shall be laid out, the owner or proprietor shall cause a plat to be filed, what that plat shall contain, and the manner of executing and recording it. By reference to section one of article one of chapter 84, and section 2642 of the General Laws, it will be seen that the law of 1877 requires that when the inhabitants of any territory desire to be incorporated, they shall file with their petition "an accurate map of the territory sought to be incorporated," and that the only substantial change made in section one of article one of chapter 84 is concerning the filing of the map or plat. The act of 1877 appears to be a comprehensive act upon the subject of municipal corporations; it appears to cover the whole subject-matter, and plainly shows

an unmistakable intention on the part of the legislature to make the act of 1877 a substitute for the law of 1868.

At the trial the plaintiff offered the plat in evidence, and offered to show by the mayor of the city that he was personally acquainted with the streets and alleys designated on the plat, and that ever since the year 1880 the city has been in possession of said streets and alleys and that it had expended large sums of money in grading and improving them. The defendant objected to the introduction of the plat and to the offer, and the objections were sustained. The specific objections appear in the statement of facts. The plat does not give the dimensions of the lots and blocks or the width of the streets and alleys. It does, however, give the names of the streets and the numbers of the lots and blocks. Numbers appear upon the plat which were apparently intended by the donor to represent the depth of certain lots and the width of certain streets and alleys. The initial point in the description is a permanent monument; twelve different measurements and courses are given between monuments described as then in existence upon the ground. It is certified by W. H. Bradt, surveyor and city engineer, to be a correct plat of a survey made by him; and it appears to contain such matters of detail as would have enabled a competent surveyor, at the time of filing the plat or within a reasonable time thereafter, to trace the lines of survey and mark the location of the lots, blocks, streets and alleys designated thereon. The fact that nothing appears upon the plat showing the topography of the country cannot be taken advantage of by the donor at this time. There may have been nothing within the territory to show, there may

have been no ravines or gulches or streams; and after the lapse of twenty years, the donor ought not to be heard to say that the city is not entitled to the streets and alleys because he failed to place upon his plat marks to indicate a ravine, or a gulch, or a stream, or a bluff or a ditch. The plat is in substantial compliance with the statute, and the objection should have been overruled. No objection appears to have been made by Starr or the city to the alleged deficiencies in the plat, and it was not until valuable mineral was found beneath the surface that the so-called glaring irregularities in the plat were discovered.

The defendants concede that there was what is known as a common-law dedication of the streets and alleys within the Stray Horse Addition, but insist that because of alleged deficiencies in the plat filed by Starr, and also because the plat was not accepted by three-fourths of the members elected to the city council, that the city did not take the title which the statute declared it should take in the streets and alleys of additions, and did not take the title which Starr was bound to convey to it in order that the property embraced within the addition might be included within the limits of the city of Leadville and participate in the benefits to be derived from city improvements, but that the city obtained an easement only. This position is plausible, not because there is any apparent reason on grounds of public policy for degrading the estate or title taken by the city, but because it has been held in a number of cases where a statutory dedication has failed that the attempt to make a statutory dedication will be construed to be a common-law dedication. These cases apply to defects in plats, and to

steps required to be taken by the donor. We have held this plat to be sufficient for the purposes of a statutory dedication, and it remains to be determined whether the city accepted it, under the proof offered. The city council declared the plat accepted. by a vote of eight members, when the statute required nine. It undoubtedly was not at that time a legal or binding acceptance. But the city offered proof that it immediately assumed jurisdiction over the territory embraced within the plat, that it opened and improved the streets and alleys, and has ever since maintained its control over them. The city by this conduct was long ago estopped from setting up in defense to an action for injuries upon the streets or sidewalks, the original defective acceptance; and Starr and his grantees were equally estopped, after having secured an acceptance binding upon the city, from asserting any claim inconsistant with the original dedication.

Under the authority of *Wisby v. Bonte*, 19 ° Ohio St. 238, the provision concerning acceptance by three-fourths of the members elected to the city council was intended for the protection of the city, and not as a limitation upon the general powers of the city council over the streets of the city. In this case Wisby resisted the payment of an assessment for the grading of Oehler street in the city of Cincinnati, under the provisions of this statute: Sec. 63, "No street or alley which shall hereafter be dedicated to public use by the proprietor of ground in any city shall be deemed a public street or alley, or to be under the care or control of the city council, unless the dedication shall be accepted and confirmed by an ordinance passed specially for the purpose." The facts as to the dedication are: "In the year 1856, on proceedings in partition among the heirs of Simon

Oehler, deceased, in the court of common pleas of Hamilton county, the commissioners appointed to make a division among the parties, subdivided the property, laying out through the entire estate a street, to which they gave the name of Oehler street, bounding thereon the lots comprised in the subdivision, and returning the order of partition, with a plat of the subdivision thus made, to the court using this language in their report: 'We do dedicate and set apart for the public use forever hereafter, the streets, roads, and alleys, as laid out and designated on said plat, and for no other purpose whatever;' which proceedings were afterward, in the same term, approved and confirmed by the court."

There was no act of acceptance on the part of the city other than the passage of an ordinance for the grading of Oehler street. The court says: "It is clear that the parties to the partition and their privies, as between themselves, while the partition subsisted, would be estopped from questioning the existence of the street; and, after they had allowed the city to take possession of and improve it, the estoppel, in our opinion, would become effective between them and the city. * * * By this statute (the one superseded by Sec. 63), proprietors, laying out ground, within the limits of the corporation, into lots, were authorized to vest in the corporation, without its consent, the title to such streets and alleys as they chose to lay out, and thus charge the corporate authorities with the duty of keeping them open and in repair. The object of Sec. 63 was to prevent this charge from being imposed on the corporation without its unequivocal consent, which the section, to avoid all uncertainty as to the fact, requires to be manifested by an ordinance specially

passed for that purpose. The section was not intended as a limitation upon the general power of the corporation in regard to opening and improving streets, but as a restriction of the power possessed by others of imposing burdens and responsibilities on the corporation. In this case, the ordinance passed by the city council recognized the street by name, and ordered its improvement as a public way. The passage of the ordinance and the making of the improvement was necessarily an acceptance or adoption of the street by the city; and the right of the city in its care, supervision, and control is not impaired by the section referred to."

It is stated in Elliott on Roads and Streets, § 119, that "A plat which sets apart higways to the public is equivalent to a conveyance and the easement conveyed is irrevocable. * * * The extent of a dedication by map or plat is, however, to be determined from a consideration of the whole instrument, since the chief object is to ascertain the intention of the donor * * * the cardinal rule of construction is that which prevails respecting ordinary grants, and that is to discover, and give effect to, the intention of the party as manifested by his acts."

And in the case of *Cunningham v. Hendricks,* 39 Wis. 634, the court holds, that "Whether there was a dedication of the *locus in quo* to the public for a highway is purely a question of the intention of the owner of the lands, for dedication must rest on the clear intention of the owner of lands to make such dedication. If the intent to dedicate is absent, there is no valid dedication. The intention to dedicate must be made to appear clearly. It may be made to appear by deed or by parol, by words or by acts. But it cannot be made to appear with sufficient cer-

tainty by either words or acts which are themselves equivocal or ambiguous. If by acts, they must be such acts as are inconsistent and irreconcilable with any construction except the assent of the owner to such dedication."

Judge Dillon, at § 642 of Volume 2 of Dillon's Municipal Corporations, says: "As against the proprietor, a dedication of lands for streets and highways *may be complete without any act or acceptance* on the part of the public; but in order to charge the municipality or local district with the duty to repair, or to make it liable for injuries for suffering the street or highway to be or remain defective, there must be an acceptance of the dedication, and this acceptance must be by the *proper* or *authorized* local public authorities. It may be express and appear of record, or it may be implied from repairs made and ordered, or knowingly paid for, by the authority which has the legal power to adopt the street or highway, or from long user by the public."

The law as announced by the following authorities appears to be that where the intention to dedicate is clearly manifested, effect will be given to a defective statutory dedication as a common-law dedication, and that an acceptance is required whether the dedication be a common-law or a statutory one; that an acceptance will be presumed from unequivocal acts of authority such as repairing the streets; that user alone is not sufficient upon which to base the presumption of acceptance, except in some cases where it has been open and notorious, adverse to the donor and continuous for many years. And in states where statutory provisions such as ours concerning the approval of plats by the city council are found, the provisions concerning acceptance are held to be for the

the protection of the city, and not a limitation upon its powers.   *Grogan v. Town of Hayward*, 6 Sawyer, 498; *Des Moines v. Hall*, 24 Iowa, 240; *Parsons v. Trustees, etc.*, 44 Ga. 529; *Grandville v. Jenison*, 84 Mich. 54; *Laughlin v. City of Washington*, 63 Iowa, 652; *Steubenville v. King*, 23 Ohio St. 610; *Littler v. City of Lincoln*, 106 Ill. 353.

An examination of the authorities cited by appellees shows that the questions have arisen, in nearly every instance, where the donor has attempted to dedicate some street or alley or public place, and by invoking the doctrine of estoppel, the courts have invariably, when the public has used the property in controversy openly and notoriously, held that the dedication was complete, and that the donor, even though he had failed to comply with the statutes concerning the requirements of a statutory dedication, was estopped by reason of his conduct to deny the existence of the places in controvercy as public places.   But no authority has been cited which holds that the failure of the city to accept a dedication in strict accordance with the statute operates to debase the estate, intended to be passed, from a fee to an easement, where, as in this case, there was an unmistakable intention to convey the fee, and where the city had taken immediate possession and continued in possession, levied taxes and made improvements, with the assent of the donor.

In this case there was more involved than the act of dedicating streets and alleys.   The property included in the plat, by the acts of the city council became subject to the jurisdiction of the city of Leadville; it became part of the city—the boundaries of the city were extended to include the land, and the inhabitants, if any, within the territory, were given

the privileges of citizens of the city of Leadville, with all that that implies. Starr, when he filed his plat, and the city, upon its approval, intended not only that the streets and alleys designated on the plat should be public property, but that the property then owned by Starr should become a portion of the city and subject to its jurisdiction. The record of the city council of September 28, 1880, is as follows: "Be it resolved by the City Council of the City of Leadville, that the map of the Stray Horse Addition, filed with the City Clerk of said City by Thomas Starr, entitled The Stray Horse Addition to the City of Leadville, be and the same is hereby approved and accepted; and that the said addition is hereby made an addition to the city of Leadville." The question being put, there were eight votes in the affirmative and one vote in the negative, three members being absent, "whereupon the resolution was adopted, and the plat of Stray Horse Addition to the city of Leadville was declared a part of the city of Leadville." After this time, the plat, which was offered in evidence, was filed in the county clerk and recorder's office, and contains this indorsement: "This plat was submitted to the city council of the city of Leadville, and approved by three-fourths of the members elected thereto, this 28th day of September, 1880. John F. Humphreys, Mayor. Attest: Wm. M. Clark, City Clerk. (City of Leadville, Seal.)"

This plat being the property of Thomas Starr, executed and acklowedged by him, it is fair to indulge the presumption that he caused the indorsement to be made, and the plat to be recorded in the office of the clerk and recorder of Lake county; and if the plat was recorded by Starr, bearing this in-

dorsement, he would be clearly estopped to assert that it was an unauthorized or illegal indorsement, or that it was not true. If the indorsement was made and the plat recorded without the knowledge of Starr, still, if he permitted the city to take possession of the streets and alleys mentioned therein; permitted the city to expend money in the improvement of the property; permitted the city to assume jurisdiction and collect taxes, he would, after the lapse of these many years, not be permitted to assert that the indorsement was put upon the plat without his consent, or his knowledge, or that it was not true.

It is, therefore, our judgment: 1. That the law of 1868 under consideration was repealed by the law of 1877. 2. That Starr complied substantially with the law of 1877. 3. That it was the intention of Starr to dedicate, and of the city to accept, the property in controversy. 4. That the acts of the city acquisced in by Starr operated as an acceptance of the property as public property. 5. That Starr is estopped to deny that the indorsement reciting the approval of the city of Leadville is true.

The court erred, then, in refusing to admit the plat in evidence; erred in refusing to permit the mayor of the city of Leadville to testify; erred in requiring the city to prove the execution and acknowledgment of the plat as provided in sections one and two of chapter 84 of the Revised Statutes, and for these reasons the judgment of the district court should be reversed.

We do not hold that the requirements of the Laws of 1877 concerning acceptance by the city may be disobeyed and that less than three-fourths of the members of a city council can approve a plat, there-

by annexing an addition to a city and placing responsibilities upon it for the repair of the streets embraced within the addition; but that, under the facts of this case,—where the city, apparently under a mistaken view of the law, by a majority vote of the city council, accepted a dedication; has gone into possession of the property dedicated, and for the period of nearly twenty years has had exclusive jurisdiction over it; and the donor has acquiesced in all the acts of the city concerning the addition,—neither the city nor the donor can be heard to say that there was not a statutory dedication and acceptance thereof.

Starr indorsed upon his plat, in addition to everything required to make a statutory dedication, the following words: "And I, the said Thomas Starr, hereby dedicate and convey to said city as public property the streets and alleys so as aforesaid laid off, marked and designated as such on said plat."

From the following authorities it will appear that the word "convey" is the equivalent of the word "grant;" that the word "grant" has no more apt synonym than the word "convey;" and that by the use of the word "convey," the title passes: *Patterson v. Carneal's Heirs*, 3 A. K. Marshall, 1380; *Des Moines v. Tubessing*, 87 Iowa, 138; *Lambert v. Smith*, 9 Ore. 185. In the case of *Evenson v. Webster*, 3 So. Dak. 387, the court says, quoting from Kent's Commentaries: "'A deed consists of the names of the parties, the consideration for which the land was sold, the description of the subject granted, the quantity of interest conveyed, and, lastly, the conditions, reservations, and covenants, if there be any. * * * I should presume that, under the New York statute, the operative word of a conveyance is 'grant;' but,

as other words of coveyance operate equally as grants, any words showing the intention of the parties to convey, would be sufficient.   *   *   *   The word 'convey,' or the word 'assign,' or the word 'transfer,' would probably be sufficient.   It is made the duty of the courts, in the construction of every instrument conveying an estate, 'to carry into effect the intent of the parties,' and that intent may as certainly appear by these words as by any other.'"

From these authorities, then, it seems that the addition of this clause to the plat filed by Starr, and the use therein of the word "convey," passed the title to the property mentioned in the plat, or deed, to the city of Leadville.

It is contended by the defendants that, even though it should be held that the fee passed by the filing of the plat, the fee described was not a fee-simple absolute, but a base or qualified fee, and that the conveyance of streets, as such, even though by a deed passing the fee, meant only such use of the surface of the ground as is necessary or convenient for the use of the property as streets.

Section five of article eleven of chapter 84 of the Revised Statutes (R. S. '68, p. 619) provides, that "Upon the filing of any such map or plat, the fee of all streets, alleys, avenues, highways, parks, and other parcels of ground reserved therein to the use of the public, shall vest in such city or town, if incorporated, in trust for the uses therein named and expressed;" and sec. 2647 of the General Laws, (2 Mills Ann. Stat. § 4369) provides that "All avenues, streets, alleys, parks, and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property, and the

fee thereof be vested in such city or town." By the enactment of this statute in place of the statute of 1868, the intention of the legislature appears very clearly to be to pass the fee to the city.

We are referred to the case of *Olin v. D. & R. G. R. R. Co.*, 25 Colo. 177. In that case the court had under consideration section five of article eleven of chapter 84 of the revised statutes, and held that, inasmuch as the city has title to the streets for the benefit and use of the abutting lot owners and the public for street purposes, only a qualified fee passed by the dedication, and that upon the vacation of a street, the title to the center of the street vests in the abutting lot owners unless there is a reservation in the deed to the lot owners. By the statute of 1877, the fee passes by statutory dedication, unburdened of the trust "for the uses therein named and expressed;" and without considering the effect of the separate conveyance made by Starr, when he conveyed the fee to the streets and alleys by his dedication, he conveyed his entire estate. It is entirely competent for the legislature to declare what shall become public property held by the municipalities of the state as public property, upon its abandonment; but the fact of such declaration by the legislature does not change the character of the estate nor degrade it.

"Where a conveyance of land in fee is made upon a condition subsequent, the fee remains in the grantee until breach of condition and a re-entry by the grantor; the possibility of reverter merely, is not an estate in land." *Vail v. L. I. R. R.*, 106 N. Y. 283.

Our statute (1 Mills Ann. St. § 433) provides that unless words are used in the conveyance clearly signifying an intention to convey a less estate, a fee

simple or estate of inheritence passes.   But, counsel say, assuming that there was a perfect dedication by which the fee passed from Starr to the city, or that there was a perfect conveyance by which the fee passed, still, this being an action by the city of Leadville to prevent the mining of ore from under its streets, and the city having no authority to engage in mining, it ought not to be allowed to prevent mining operations in this way.   Whatever rights the city of Leadville may have are not involved at this time; whether the city has the right to mine and extract ores from beneath its streets must be a question for further consideration. However that may be, the city of Leadville is not called upon to permit others, without compensation, to mine and extract ores from beneath its streets.

In the case of *Zinc Company v. La Salle*, 117 Ill. at page 419, the court says:   "The point is made, that owners of city lots have the right of subterranean passage from one to the other side of the street.  No authority is cited in favor of this position, and we think none can be.  We think the position untenable. This certainly cannot be claimed as an incident to the right resulting from the possibility of a reverter, and if we have successfully shown that the rights of abutting lot owners are simply to the access and use of the streets as such, it must follow that they have no right to construct subterranean passages.  Doubtless the public, in proper cases, may construct or authorize the construction of subterranean passages for the accommodation of the public; but the right is public, and not private, and is to be exercised for the public good and not for private emolument."

When this plat was filed and this conveyance made, neither the donor nor the authorities of the city of

Leadville had in mind the future value of the property beneath the surface of the streets. It was farthest, probably, from the thoughts of those engaged in administering the affairs of the city, or of the owner of the property, that in the course of years valuable deposits of ore would be found beneath the surface of those streets and alleys; and, as we view it, if Leadville has large and valuable bodies of ores under her streets, it is her good fortune, and such ore cannot be taken without her consent.

The grantees of the donor, in extracting ore from beneath the streets and alleys of the city without the city's consent, are mere tresspassers, and the municipality is entitled to remuneration under the law applicable to such cases.

The cause is reversed and remanded.

*Reversed.*

## On Petition for Re-hearing.

Chief Justice Campbell and Mr. Justice Gabbert concurring specially.

We think the judgment ought not to stand. That there may be no misapprehension as to our position, we herein state the grounds upon which our conclusion rests.

In their petition for a re-hearing counsel for appellees challenge many statements made in the opinion as to what facts the record discloses. In the view we take of the case as it is now before us, these criticisms are not important and call for no discussion.

We concur in the reversal because the trial court erred in refusing to admit evidence offered by the plaintiff. This rejected evidence, had it been received, would, in connection with that admitted, at

least tend to establish a statutory dedication, and for that reason was admissible. Defendants' contention here that plaintiff's offer of proof of an estoppel *in pais* was properly rejected because estoppel was not pleaded is not tenable; and this is so, if for no other reason, because it appears that no such specific objection was made to its introduction. In case of another trial, neither party is concluded by any supposed determination of fact by this court, but is free to introduce any competent evidence upon every material allegation that is in issue. Indeed, we have not attempted to pass upon disputed questions of fact for the very good reason that much of the evidence offered by plaintiff was ruled out, defendants offered no evidence at all, and a non-suit was directed. As we understand it, discussion of the legal propositions in the opinion of Mr. Justice Steele was in response to arguments of counsel, and upon the assumption that if, upon final hearing, the facts are established as plaintiff claims them to be, and which its offer of proof tended to show, then the law as therein declared was to be applied.

We do not consider it necessary or appropriate at this time to express our views as to the legal propositions discussed by our associate further than they are indicated in the reason given for concurring in the judgment of reversal; preferring to withhold them until we are required to pass upon a record containing all the evidence produced at another trial. For when all the evidence is in, it might be that no such case would be presented as the discussion mentioned assumes; and until the character of the dedication is finally determined, the question of title of the respective parties to the streets and alleys, or the rights of either to the real subject-

matter in controversy is not before us. For this reason no opinion is expressed upon either of these questions, and the original opinion must be read in the light of what is here said.

The petition for re-hearing is denied, and the judgment is reversed.

*Reversed.*