1. A public street or public alley may come into existence by dedication, but such dedication to public use is not complete until two things appear: 1. An intention on the part of the owner to dedicate his property to the public use. 2. An acceptance on the part of the public of the property for such use. Parsons v. Trustees, 44 Ga. 529; Hyde v. Chappell, 194 Ga. 536, 542 (22 S.E.2d 313).
2. Where a plat of land, divided into lots and streets, is recorded and lots are sold with reference thereto, the requisite intention to dedicate is presumed. 3 Dillon, Municipal Corporations (5th ed.), § 1079; Bayard v. Hargrove, 45 Ga. 343; Harrison v. Augusta Factory, 73 Ga. 447.
3. Acceptance need not be express, but if a street be used and worked by the public for such a length of time that the public accommodation and private rights might be materially affected by the interruption of the enjoyment, the dedication is complete. Healey v. Atlanta, 125 Ga. 736 (54 S.E. 749); Hyde v. Chappell, supra. See also, as to proof of acceptance by a municipality by the exercise of control over the street by working it, etc.: Wade v. Cornelia, 136 Ga. 89 (70 S.E. 880); Lastinger v. Adel, 142 Ga. 321
(82 S.E. 884); Atlanta West Point R. Co. v. Atlanta, 156 Ga. 251 (119 S.E. 712); Donalson v. Georgia Power Light Co., 175 Ga. 462 (6) (165 S.E. 440); Adams v. Richmond County, 193 Ga. 42, 48 (17 S.E.2d 184).
4. Dedication and use by the public would not of themselves make a street a public street so as to charge the municipality with the burden of repairs and maintenance and liability for injuries sustained by reason of the defective condition of the street, unless the dedication is accepted by the proper municipal authorities or there is evidence of recognition of the street as a public street. Penick v. Morgan County, 131 Ga. 385, 391 (62 S.E. 300). See also Kelsoe v. Oglethorpe, 120 Ga. 951 (48 S.E. 366); Seaboard Air-Line Ry. Co. v. Greenfield, 160 Ga. 407, 418 (128 S.E. 430); 3 Dillon, Municipal Corporations (5th ed.), 1727, § 1087.
5. When a platted street is by a municipality put in condition for travel, and the public is invited to use it, such street thereby becomes "opened" as a public street in fact. Robins
v. McGehee, 127 Ga. 431, 435 (56 S.E. 461). See also 25 Am. Jur. 368, § 51; Wilcoxon v. City of San Luis Obispo, 101 Cal. 508 (35 P. 988, 989). No formal ordinance opening a street is required. 4 McQuillin, Municipal Corporations, 54, § 1408; Philadelphia v. Thomas's Heirs, 152 Pa. 494
(25 A. 873).
6. Under section 3 of the act of 1941 (Ga. L. 1941, p. 1748), amending its charter, the Mayor and Councilmen of Savannah Beach, Tybee Island, are without authority to "sell any public street which has been opened *Page 15 
to the public by the municipality and used by the public, except after approval by a majority vote of all the qualified voters of said municipality."
7. The petition as amended set forth a cause of action for cancellation of the deeds and injunction as prayed, and the court did not err in overruling the general demurrer. The special demurrers are also without merit.
8. Disregarding the question as to whether or not, under the facts shown by the record, Savannah Beach, Tybee Island, had a fee-simple title to "Alley No. 1," which was the equivalent of a street, or only an easement therein, as respectively contended by the parties, under the evidence as to dedication and the acceptance and opening thereof by the municipality, the use by the public for more than thirty years, the nonabandonment of the street or alley, and as to the purported sale, materially affecting the public accommodation and private rights in the enjoyment thereof — it being admitted that no election with a majority of the qualified voters consenting to the sale had been held, as required by the act of 1941 (Ga. L. 1941, p. 1748) — the trial judge was authorized in his discretion to grant an interlocutory injunction, restraining the defendants from erecting any obstruction or building on the said alley or street or in any wise preventing the free passage of the petitioners and the public generally thereon, and from conveying in any manner the said property or closing or obstructing the same or placing any improvements thereon.
Judgment affirmed. All the Justices concur.
 No. 16494. FEBRUARY 14, 1949. REHEARING DENIED MARCH 16, 1949.
Robert Drane, J. A. Myers, Carolyn Myers Schley, and J. C. Lewis Jr. filed in the Superior Court of Chatham County, Georgia, an equitable petition against Savannah Beach, Tybee Island, a municipal corporation located on Tybee Island in Chatham County, John C. Wylly, and his wife, Mary C. Wylly, seeking to set aside a deed dated July 15, 1948, executed by the Town of Savannah Beach under its corporate name, Savannah Beach, Tybee Island, conveying certain realty, known as "Alley No. 1" and lying within the town, to the defendant, John C. Wylly, and also a deed from him to his wife, Mary C. Wylly, under date of July 17, 1948, conveying the same property, and also praying that the municipality be enjoined from selling, conveying, or alienating in any manner whatever the said Alley No. 1, and that the defendants be enjoined from erecting any obstruction on the said street or fencing it in or building thereon or in any wise preventing the free passage of the petitioners and the public *Page 16 
generally along and through the street, and be temporarily enjoined from conveying in any manner the said street to any person or persons and from closing or obstructing the street or putting any improvements thereon until a hearing could be had upon the merits of the petition. It was alleged that Robert Drane was the owner of the western portion of lot 24, ward 6; that J. A. Myers and Carolyn Myers Schley were the owners of lot 26, ward 6; and that J. C. Lewis Jr. was the owner of the eastern portion of lot 26, ward 6; the properties of the petitioners adjoining a public street in the Town of Savannah Beach known as Alley No. 1, approximately 75 feet in width and 200 feet, more or less, in depth, the said Alley No. 1 lying between the said lots. It was further alleged: By deed dated July 15, 1948, the Town of Savannah Beach, under its corporate name, Savannah Beach, Tybee Island, conveyed to the defendant, John C. Wylly, the said public street, known as Alley No. 1, at private sale, for a consideration of $2500, the deed being duly recorded and a copy thereof being attached to the petition as Exhibit A. By deed dated July 17, 1948, the said Wylly conveyed the said street to his wife, Mary C. Wylly, for natural love and affection, the said deed being duly recorded, and a copy thereof being attached to the petition as Exhibit B. The sale to the said Wylly was illegal, null and void, and of no effect, was an ultra vires act, and the deed pursuant thereto is void and of no effect for the reasons hereinafter stated. Prior to August, 1909, the public street known as Alley No. 1, ran diagonally from Chatham Avenue to Tybee Inlet, and lots 24 and 26 then, as now, bounded the said street on the north and south respectively. In order to have the north and south boundaries of the street run at right angles from Chatham Avenue to Tybee Inlet, the owners of the property abutting the said street, predecessors in title to the petitioners, and other property owners conveyed to the Mayor and Councilmen of the Town of Tybee, the then corporate name of the defendant, Savannah Beach, Tybee Island, the necessary portions of their respective properties to make the public street conform to the new arrangement; and the Mayor and Councilmen of the Town of Tybee conveyed to the lot owners its interest in such portion of the original street as was necessary to straighten the lot lines, the said deed being duly recorded, and a copy of *Page 17 
said deed and plat being attached to the petition as Exhibit C and made a part thereof. The petitioners, Robert Drane and J. C. Lewis Jr., are successors in title to A. B. Palmer, as the owners of lot 24, ward 6, and the petitioners, J. A. Myers and Carolyn Myers Schley, are successors in title to their mother, Carolyn McD. Myers, as owners of lot 26, ward 6. The deed between the adjoining owners of the said property and the Mayor and Councilmen of the Town of Tybee contained the restriction and provided specifically that, in consideration of the said conveyance, their respective portions of the property conveyed to the municipality as a street were conveyed "unto the Mayor and Councilmen of the Town of Tybee and to their successors and assigns, as part and parcel of Alley No. 1 for public use as a street forever." This condition imposed upon the municipality the duty to hold the said property for the use as a public street for which it was conveyed.
It was further alleged: "9. At the time of the aforesaid deed, Alley No. 1 was a street open to the public and used by the public, and since the execution of said deed the said Alley No. 1 has remained a public street, open to the public, and has been used by the public as a means of access to Tybee Inlet and there has been no abandonment of said street, which has been used by the petitioners and the public generally as a public street, and is the only means of ingress and egress available to petitioner, J. C. Lewis Jr., to Tybee Inlet, as his cottage is located on the eastern part of said lot twenty-four (24), away from the Inlet.
"10. Tybee Inlet is a large body of water and an arm of the sea and is used by petitioners and the public generally for bathing, fishing, crabbing, boating and other uses incident to such bodies of salt water.
"11. At the time of the execution of said conveyance to the said John C. Wylly, the municipality of Savannah Beach, Tybee Island, executed an escrow agreement with the said Wylly, under the terms of which the deed and the purchase-price were to be placed in escrow for a maximum period of six (6) months, and said escrow agreement further provided that, should the sale of said street be declared illegal or should the said Wylly determine that the said sale was illegal, he should have the right *Page 18 
to reconvey the lot to the municipality and recover back from said municipality the purchase-price.
"12. Under the terms of said escrow agreement, the said Wylly had the right to withdraw the deed and demand the purchase-price within a six-months' period, and notwithstanding the time element he elected to exercise the right within two days after the execution of the agreement.
"13. Under the terms of said escrow agreement, if the sale should be declared void at any time, the said Wylly had the right to a return of the purchase-money from the municipality.
"14. At the time of the conveyance to the said Wylly, the municipality owned the fee to only such part of said street as had been conveyed to it by the adjoining property owners by deed dated August, 1909, herein before referred to, and had only an easement for a street to the remainder of said street, and could not convey the fee-simple title in such remainder.
"15. If the said street was to be abandoned as a street, the title thereto would revert to the adjoining property owners and said town could not sell the same for private use.
"16. After the sale of the said property to the said Wylly, petitioners herein and the other property owners objected to the sale of the street and demanded that the transaction be rescinded. As a result of said complaints, a special meeting of the Council of the Town of Savannah Beach was held on August 9, 1948, and a resolution adopted reciting the fact that objections had been interposed and expressing a doubt as to the legality of the sale. Pursuant to said resolution, the Town of Savannah Beach tendered to the said John C. Wylly and to his wife the sum of Two Thousand Five Hundred ($2500), and requested that the defendants, Wylly and his wife, reconvey the property to the municipality and accept the return of the purchase-price. Both the said Wylly and his wife refused to rescind the sale and refused to accept the return of the purchase-price and to reconvey the property to the municipality.
"17. Petitioners show that the conveyance by the defendant, Savannah Beach, Tybee Island, to the said Wylly was illegal, null and void for another reason. The statute of the State of Georgia, approved March 24, 1941 (Ga. L. 1941, p. 1748), under which the conveyance purports to have been made, specifically *Page 19 
prohibits the closing or sale of any public street which has been open to the public by the municipality and used by the public, except with the approval of the qualified voters in an election held for that purpose. The sale complained of was made privately without notice, and without holding an election for said purpose.
"18. In the year 1945 your petitioners heard that the municipality was contemplating the sale of said street to a private individual, and at that time the said municipality was put on notice in writing that your petitioners objected to the sale of said street to a private individual.
"19. Petitioners show that, if said sale is allowed to stand as made, your petitioners will suffer irreparable damage, the amount of which can not be readily ascertained, and the value of their adjoining property will be greatly decreased, and the public generally will be denied access to the Inlet over said Alley No. 1 because of its closing and conveyance to private use.
"20. Your petitioners have no adequate remedy at law and have a common interest in having said street continued as a public street, and bring this action jointly in order to avoid a multiplicity of suits.
"21. The relief hereinafter prayed for lies within the equitable jurisdiction of this honorable court."
The defendants, John C. Wylly and Mary C. Wylly, demurred specially as follows: 1. To the allegations of paragraph 9 of the petition, on the ground that it contains conclusions of the pleader, unsupported by allegations of facts, as to the Alley No. 1 not having been abandoned, that it has remained a public street open to the public and used as a means of access to Tybee Inlet; that the allegations fail to state how and in what manner the said Alley No. 1 has remained a public street, open to the public and used by the public as a means of access to Tybee Inlet; and that the allegations are defective and insufficient in that they do not show that the municipality has ever accepted the said Alley No. 1 or used it as a public street. 2. To the allegations of paragraphs 11, 12, and 13, as irrelevant and immaterial to the petitioners' alleged cause of action. 3. To paragraph 14 on the ground that it is vague, indefinite, and insufficient, in that it fails to set out in what portion of the said street the municipality *Page 20 
owned the fee, and does not set out the extent of the remainder of the street in which the municipality has an easement, all of which information the defendants are entitled to have. 4. To paragraph 15 of the petition, on the ground that it is vague, indefinite, and insufficient, in that it contains conclusions of the pleader, there being no facts alleged to show that, if the street were abandoned, title thereto would revert to the adjoining property owners and the town could not sell the same for private use. 5. To paragraph 16, on the ground that it is irrelevant and immaterial to the petitioners' alleged cause of action. 6. To paragraph 18, on grounds which need not be stated, since the objections were met by amendment. 7. To paragraph 19, on the ground that it is vague, indefinite, and insufficient, in that it sets forth a conclusion of the pleader, fails to show why the irreparable damage could not be ascertained, and the allegation that the public generally will be denied access to the Inlet over Alley No. 1 is irrelevant and immaterial.
The defendants demurred generally on the grounds: 1. No cause of action is set forth against the defendants. 2. The petition shows upon its face that there was no acceptance by the municipality or its predecessor of the alleged dedication of Alley No. 1 as a public street, and, therefore, it never legally became a public street, and the municipality had the right to dispose of it as a part of the public domain. 3. The petition shows upon its face that the petitioners have been guilty of laches, in that they knew for the past three years that the municipality was contemplating the sale of Alley No. 1, and took no steps, legally or otherwise, to prevent such sale, and are now estopped to complain; and that, furthermore, they took no steps to have the municipality accept Alley No. 1 as a public street and open and improve it as a street.
The petitioners amended by striking the allegations of paragraph 14 of the petition and substituting in lieu thereof the following: "At the time of the conveyance to the said Wylly, the municipality held only such part of said street as had been conveyed to it by the adjoining property owners by deed dated August, 1909, subject to the limitations and conditions set forth in said deed, namely, `as part and parcel of Alley No. 1 for public use as a street forever,' and had only an easement for a public *Page 21 
street to the remainder of said street, and the said municipality could not convey the fee-simple title to any part of said street for private uses and purposes."
The petitioners also amended the petition by adding to the allegations of paragraph 18 the following: "That the private individual to whom a sale was contemplated by the municipality was Andrew J. Ryan, and the negotiations for said contemplated sale were carried on during the month of October, 1945, a more exact date being unknown to your petitioners. That on October 17, 1945, petitioners, Robert Drane and J. A. Myers, wrote letters to the Mayor of Savannah Beach, objecting to said sale. On November 5, 1945, letters objecting to said proposed sale were written for Robert Drane and J. C. Lewis Jr. by their respective attorneys, copies of which letters are attached to this petition and made a part hereof. Said contemplated sale to Andrew J. Ryan never took place."
The court overruled all demurrers.
In addition to the demurrers, the defendants filed answers denying the right of the petitioners to the relief sought.
The court, having granted a temporary restraining order, heard evidence and entered an interlocutory decree, enjoining the defendants from erecting any obstruction or building on the said Alley No. 1 or in any wise preventing the free passage of the petitioners and the public generally thereon and from conveying in any manner the said property and from closing or obstructing the same or placing any improvements thereon. The court again overruled all demurrers. The defendants excepted to the judgment overruling the demurrers and to the above mentioned order of injunction.
Disregarding several questions raised and argued, the evidence sufficient for a decision in the present case may be stated in substance as follows: Tybee Beach Company acquired by deed dated July 16, 1887, the part of greater Tybee Island which includes the land in controversy, known as Alley No. 1. That company developed the property by having it surveyed and divided into building lots, the survey and subdivision being shown by a map prepared by a civil engineer and dated March, 1890, a copy of which map was in evidence. On that map the present Alley No. 1 is shown between lots 24 and 26 in ward 6, *Page 22 
running from Chatham Avenue to Tybee Inlet, an arm of the sea. The Town of Ocean City on Tybee Island had been incorporated on October 15, 1887. Ga. L. 1886-87, p. 558. On December 26, 1888, the name of the town was changed to Town of Tybee. Ga. L. 1888, p. 271. On August 1, 1929, the name was changed to Savannah Beach, Tybee Island. Ga. L. 1929, p. 1380. On May 19, 1891, Tybee Beach Company conveyed lots 24 and 26 to William M. Bohan and J. B. Floyd, referring in the deeds to the aforesaid map or plat and bounding the lots by the said Alley No. 1. Bohan and Floyd subsequently conveyed lot 24 to Armin B. Palmer, the predecessor in title of Robert Drane and J. C. Lewis Jr., and conveyed lot 26 to Carolyn McD. Myers, the mother of Carolyn Myers Schley and J. A. Myers, the other plaintiffs in the present action. There was never any express conveyance to the municipality of the street or alleys shown on the aforesaid subdivision map or plat. According to the original plat, the lot lines of lots 24 and 26 ran diagonally from Chatham Avenue to Tybee Inlet, and this was also true as to the lots adjoining lots 24 and 26. In 1909 the owners of lots and the Mayor and Councilmen of the Town of Tybee cross-conveyed in one deed sections of the respective properties so as to straighten the lot lines and the lines of Alley No. 1 to run perpendicular to Chatham Avenue and Tybee Inlet, except the portion of the Alley No. 1 and the portions of the adjoining lots lying between what was then designated as the bulkhead of the western end of the properties and the low-water mark of Tybee Inlet. To this deed was attached a plat showing the corrected lot lines and the parcels of land cross-conveyed, and the conveyances contained the recital that the property was conveyed to the town "as part and parcel of Alley No. 1 for public use as a street forever." The Alley No. 1 was about 75 feet in width and about 200 feet in length, and at some time prior to 1915 a boardwalk had been erected from Chatham Avenue to Tybee Inlet along the alleyway. This boardwalk continued from Chatham Avenue in a general direction of what is now Nineteenth Street to the ocean, and thus linked the ocean or main beach with the Inlet. In evidence was a picture, taken in 1915, showing that at that time there were no streets laid out and paved as at present. *Page 23 
Also in evidence was a deed, dated July 15, 1948, signed by the municipality, conveying Alley No. 1 to John C. Wylly, but reserving to itself for the use and benefit of the owners of lot 24, ward 6, their successors and assigns, for the purpose of ingress and egress, a 10-foot easement or right-of-way along the northern boundary of Alley No. 1 from Chatham Avenue to the Inlet; also a deed, dated July 17, 1948, from John C. Wylly to Mary C. Wylly, conveying the said Alley No. 1.
J. C. Lewis Jr. testified in part: "I used to keep a boat there [at the Inlet], and my father did before me. Boats have been left there as long as I can remember. I am 22 years old and I can remember 15 years back. . . That was the only access the members of the Amfico Club had to the Inlet. It was used by them to get there. As to the last couple of years, I don't know; I was away several years. . . Years ago I remember my father walking down that boardwalk to the Inlet. . . It has now fallen into disrepair . . but there is still an arch over the entrance to the boardwalk, and a part of the street still remains there. In the past few years this street was seldom used due to sand and weeds. I have seen it used this year for parking adjacent to Chatham Avenue, and on several occasions people used it to go to the beach this summer. Prior to this summer it was used more extensively. I have observed people from the Amfico Club using it. I have seen somebody carrying a boat down there possibly two years ago. I couldn't say who it was. I know Mr. Dooley used to do it frequently, and Mr. Fred Harms. Mr. Dooley used to take a pick-up truck and carry a speed boat down there. The car went through Chatham Avenue and down that alley. . . I have seen very few people there. Mr. Dooley's pick-up truck is a specific case I remember. Numerous automobiles have gone down there. I could be more specific. I remember when the municipality used to clear it up. I would say that was prior to the last war."
Mrs. Carolyn Myers Schley testified: "My brother, Mr. J. A. Myers, and myself own a cottage on this lot 26. About 1903 or 1904 I started spending the summer at Tybee. I was down there continuously until 1928 and spasmodically since. Our cottage adjoins Alley No. 1 on the south side of our lot. . .I certainly do remember the boardwalk. . . It went from the *Page 24 
Inlet straight through to the ocean between Mr. Pratt Adams' and Mr. Arthur Gordon's property. . . I have seen you (Mr. B. B. Cubbedge Jr.) using it. I should say it was there as long as I can remember. The boardwalk got in bad repair a good many years ago, and it was really quite dangerous after the road to Tybee was built. Little by little it disintegrated, and you had to go through the weeds and sand, and they would clear it out from time to time. It would change. There would be marsh one year, and the next year there would be a ditch there. . . In the early days of Tybee, before the highway was constructed, there were no paved roads on the island, only boardwalks. There were no automobiles. When they first started delivering ice, there was a horse and wagon going through the sand. Boardwalks were commonly used as streets in the early days, and that was uniformly over the island in places where streets are now. . . I stayed there during that period (1915). . . This boardwalk is continuous straight through from the Inlet and right across Chatham Avenue to the ocean. At that time Tybee families and the general public came to the Inlet through the street over that boardwalk. They kept boats down there, right in front of it. I saw John Wylly have a boat there. I did not actually see who paid for that boardwalk. The city kept it in repair. I have seen the workmen there. . . Since 1915 I have spent summers in that cottage continuously until 1928, and during that time I noticed people using that boardwalk continuously. . . I have not been there this summer. I was there last July over a month. This alley was used then by the public. I saw people using it, people I did not know personally, crabbing, fishing, and swimming down there. I know that the Amfico Club used it. . . I don't know that I could swear that this boardwalk was constructed by the city, but I am certain that neither Mr. Palmer nor my mother built it. I know it was built and maintained by the municipality as well as people know those things without actually seeing them. I not only saw it constructed, but I saw it frequently repaired. I know of my own knowledge that the City of Tybee did that."
Dr. Robert Drane testified: "I know that every week end and holiday that street is used extensively by the public. A few of them use the whole length. Many of them use a part of it *Page 25 
and go around the other way, and persons other than property owners keep boats on the Inlet and use this street. . . About three years ago I saw the city employees cleaning out the weeds. There is no obstruction on the surface."
A. Pratt Adams Jr. testified: "My family owns a cottage at Tybee, and I have occupied it in the summer for many years, with the exception of the war years. . . I used to use that street known as Alley No. 1 six or seven times a day as a small boy. I have not used it in a number of years now. . . The last time I saw Mr. J. C. Lewis Sr. on that street was ten or twelve years ago. . . I have seen numerous people use this street during my stay there. I have used it myself as a small boy on that island and up until the time I started to work. I would go fishing almost every day in the summer time, fishing and swimming, until I was 17 or 18 years old. I usually used that walk. . . I have seen municipal employees working on that boardwalk, but only repair work. . . I have not seen anybody doing any improvements to that street that I remember except fifteen or eighteen years ago. I saw people go through there carrying an outboard motor in a wagon. . . I have seen an occasional automobile, pulling a trailor to the Inlet with a boat on it. . . The last time I recall seeing anybody actually walk down it was Mr. J. C. Lewis Sr., ten or twelve years ago. I am pretty sure there was a boardwalk then. Mr. Lewis was coming from the Inlet to his house, coming to Chatham Avenue, to go to his house. . . You could not use Alley No. 1 for anything except the boardwalk. It was supposed to be a street. If no boardwalk there, and if I wanted to get to the river, I guess I would go over it, but it was not all that sand and weeds. For many years that boardwalk was the only way to go, the best way to go, because it was quite a substantial boardwalk. They were lengthwise, not short boards, that ran across this way. Until Mr. Myers put a concrete walk down there, that boardwalk was the best way to go. I have seen one of your clients, Mr. Budreau, go through there in an automobile just a few times. . . Those boards ran lengthwise on the boardwalk constructed by the municipality. They were not laid with the boards across like flooring. I would not say all private walks were crosswise. Most of them were. On this boardwalk the boards ran lengthwise *Page 26 
the same as others supposed to have been built by the municipality. That would indicate it was a municipal constructed boardwalk, the whole way across from the Inlet to the ocean."
Alexander A. Lawrence testified: "I am familiar with Alley No. 1. . . I know of my own knowledge that this street known as Alley No. 1 has been used by the public generally. People use the Inlet for boating, fishing, crabbing, shrimping, and bathing. . . My attention to Alley No. 1 was only in recent years. . . I said I used Dr. Drane's property; otherwise, I would use Alley No. 1."
Richard Dooley testified: "I live at Tybee during the summer months. . . I have used that Alley No. 1 quite often. My brother purchased a speed boat around 1939, and we used to bring it over to the Inlet through there in a truck. . . It never got stuck. It had a trailer with a pretty heavy load on it. . . I have seen that alley with less weeds than now. Weeds are growing wild there now. You have to keep right behind it. I kept a boat on that public beach. The last time I used that alley was in 1944."
Malcolm Bell Sr. testified: "I had a cottage down there across Chatham Avenue from the Inlet some years ago, from 1910 to 1924. . . I kept a small motor boat and a bateau at the Inlet opposite Alley No. 1, sometimes at Palmer's and I made use of that Alley No. 1 to go back and forth to the Inlet. I always used that boardwalk leading from Chatham Avenue to the Inlet. It was used by the public generally, those people who had boats and motors, and people on the Inlet, the Adams and Gordons. Prior to the opening of the road to Tybee, in the early days there were no streets at all, nothing but boardwalks, four 10-inch boards running lengthwise. It was all sand and soft grass. The board walk was the common means of going down the street. The Tybee Beach Company or municipality had all the main street boardwalks laid lengthwise; for instance, the boardwalk to the Inlet. That seemed to be the general plan. The private walks were laid across."
Fred Wessels Jr. testified: "I . . am connected with the Southern Mutual Insurance Company. We own land and the Amfico Club at Savannah Beach, which is across from Alley *Page 27 
No. 1 and in the intersection of Chatham Avenue and 19th Street and Butler Avenue. That club house is used to entertain our agents from Georgia, South Carolina, North Carolina, and Florida, around twenty-five people, from the 15th of June and going through Labor Day week end. The club people kept a boat until 1941 when the storm destroyed it. It was kept at the end of Alley No. 1. Our guests used this Alley No. 1 steadily and continuously. . . The boardwalk was there in 1941. It was in disrepair but fairly usable."
J. V. Clark testified: "I was past president of the Hi-Y Club of Savannah at the last semester. The club went on picnics to Tybee in 1946 and 1947, and they had a house party down there with around thirty-five or forty people, I imagine. I was present. Members would go to the Inlet to swim, fish, and crab through Alley No. 1 and come back to the house party through it."
Mrs. Carolyn Myers Schley, recalled, testified: "Public Alley No. 1 has been worked over by the city twice since the storm of last October. The first one was referred to by one of Mr. Myrick's witnesses, a jetty that was destroyed by the storm. That was when they first worked in that vicinity and took the sand from the street. The last time, to my personal knowledge, they worked with a bulldozer and engineer, the city bulldozer, at my request to the mayor and aldermen, Mr. Buckley, the city engineer, and everybody else on the Island. They sent the bulldozer down there in the last week in April, 1948, . . and it entered Alley No. 1 from Chatham Avenue and swept all the bushes and weeds right up to our house. It made six or eight trips through Alley No. 1. . . This storm water went under our house, and we got the city to fill up the hole, done at our request. My brother and I contended it was the city's responsibility, because with proper drainage through Alley No. 1 it would not have occurred. . . This was the last week in April, 1948."
John F. Paulsen testified by affidavit: For about fifteen years he had spent a part of each summer at Savannah Beach in a cottage except when he was in the service of the United States Army, from November, 1943, to April, 1946. During the time at the beach, he had used Alley No. 1 as a means of access to the Inlet. He knows of his own knowledge that J. C. Lewis Jr. *Page 28 
or his father kept a boat on the Inlet at the end of Alley No. 1, and a number of times the affiant has gone with J. C. Lewis Jr. across Alley No. 1 to reach the Inlet to use the boat and to swim. On occasions all members of the Lewis family would use Alley No. 1 as a means of access to the Inlet. The affiant has on occasions used Alley No. 1, in company with other people, as a means of access to the Inlet or getting to Chatham Avenue from the Inlet. He has seen other persons, unknown to him, use the Alley No. 1 as a means of access to the Inlet. He recalls that at one time there was a boardwalk, extending from Chatham Avenue to the Inlet, which was used by the public. After the boardwalk disappeared for some time there was a path, across Alley No. 1 leading from Chatham Avenue to the Inlet, which the affiant used on several occasions.
On the question of damage to adjoining property in case the alley or street should be closed there was testimony as follows: The petitioner, J. C. Lewis Jr., testified that he believed that, with the way closed and a house built so that he could not see the Inlet, it would cut off his breeze and damage his property; and that, if the way were closed he would not have free access to the Inlet to carry boats and motors. The petitioner, Mrs. Carolyn Myers Schley, testified that, if the avenue or street were closed and one or more houses built there, she considered it would greatly damage her property; and that, if the rear of the property were sold to a prospective customer, he would have no other means of access to the Inlet except over a privately owned way. Dr. Robert Drane, petitioner, testified that, if the street were sold for private use and closed to the public and one or more cottages erected on it, his property would be considerably damaged, not only in terms of money, but as a place in which to live it will be ruined. The petitioner, J. A. Myers, testified that, if the way were sold for private purposes and closed and a cottage were built thereon, it would affect the value of his property because there would be no other way to the Inlet except through private property, and he considered that his property would be permanently damaged. A. Pratt Adams Jr. testified that, if the street were closed, he would have to cross private property to get to the public beach unless he went to the old turntable, about half a mile, or went around by the ocean. *Page 29 
Alexander A. Lawrence testified that, if the street were closed he would have no way at all to the Inlet except through the kindness of Dr. Drane. Fred Wessels Jr. testified that, if the street was sold, it would damage the value of his property, cutting off the view of the Inlet.
It was agreed and stipulated by counsel for both sides that no election was held by Savannah Beach, Tybee Island, under the act of 1941 (Ga. L. 1941, p. 1748) to obtain authority for a sale of Alley No. 1 to John C. Wylly; and that certain copies of deeds attached to the petition as exhibits were admitted without objection.