1. "To sustain an application for the removal of obstructions from an alleged private way, the right to which is based upon prescription by seven years user, it is essential that the applicant show not only that he has been in the uninterrupted use thereof for seven years or more, that it does not exceed fifteen feet in width, and that it is the same fifteen feet originally appropriated, but that he has kept it open and in repair during such period." Johnson v. Sams, 136 Ga. 448
(2) (71 S.E. 891). See also Rogers v. Wilson, 171 Ga. 802
(4) (156 S.E. 817); First Christian Church v. Realty Investment Co., 180 Ga. 35 (178 S.E. 303); Hall v. Browning, 195 Ga. 423 (24 S.E.2d 392).
(a) The evidence not showing that the petitioners had at any time made repairs to the alleged fifteen-foot alley as to which they claimed a prescriptive right of user, they were not entitled to have removed, under the Code, § 83-112, an obstruction which had been placed by the defendant in the alleged fifteen-foot alley.
2. "A public street or public alley may come into existence by dedication, but such dedication to public use is not complete until two things appear: 1. An intention on the part of the owner to dedicate his property to the public use. 2. An acceptance on the part of the public of the property for such use. Parsons v. Trustees, 44 Ga. 529; Hyde v. Chappell, 194 Ga. 536, 542 (22 S.E.2d 313)." Savannah Beach, Tybee Island v. Drane, 205 Ga. 14 (1) (52 S.E.2d 439). *Page 597 
3. Acceptance need not be express, but if a street or alley be used and worked by the public for such a length of time that the public accommodation and private rights might be materially affected by the interruption of the enjoyment, the dedication is complete. Healey v. Atlanta, 125 Ga. 736
(54 S.E. 749); Hyde v. Chappell, supra. See also, as to proof of acceptance by a municipality by the exercise of control over the street or alley by working it, etc., Savannah Beach, Tybee Island v. Drane, supra, and cases cited.
4. Dedication and use by the public would not of themselves make a street or alley a public way so as to charge the municipality with the burden of repairs and maintenance and liability for injuries sustained by reason of the defective condition of such way, unless the dedication is accepted by the proper municipal officials or there is evidence of recognition of such way as a public one. Savannah Beach, Tybee Island v. Drane, supra, and cit.
5. In an application for an interlocutory injunction there should be a balancing of conveniences and a consideration of whether greater harm might be done by refusing than by granting the injunction. Everett v. Tabor, 119 Ga. 128 (4) (46 S.E. 72); Jones v. Lanier Development Co., 188 Ga. 141
(2 S.E.2d 923); Ballard v. Waites, 194 Ga. 427, 429 (3) (21 S.E.2d 848).
6. An encroachment upon a public alley or street of a municipality is a public nuisance, and one who is specially injured thereby may proceed in his own name to enjoin such encroachment. Savannah Railway Co. v. Gill, 118 Ga. 737
(3) (45 S.E. 623); Hendricks v. Jackson, 143 Ga. 106
(1) (84 S.E. 440); Holman v. Athens Empire Laundry Co., 149 Ga. 345, 349 (100 S.E. 207); Moon v. Clark, 192 Ga. 47, 50 (14 S.E.2d 481).
7. Upon application of the foregoing principles of law, under the evidence as to dedication and acceptance of the passageway in question, its use by the public for more than thirty years, and as to the public accommodation and private rights being materially and adversely affected by the interruption of the enjoyment of such use, and as to the recognition by the city officials of such passageway as a public one by causing it to be worked and repaired from time to time over a period of many years, the trial judge abused his discretion in refusing to grant an interlocutory injunction against the obstruction of such passageway by the defendants in the construction of a building then in process and the piling of building materials within such passageway.
(a) The fact that to prevent obstruction of the passageway the defendants would incidentally be required to remove a small fragment or portion of a brick foundation wall already laid in the passageway would not make the injunction here sought mandatory in nature. Westbrook v. Comer, 197 Ga. 433
(6-a) (29 S.E.2d 574).
Judgment reversed. All the Justicesconcur.
 No. 16657. JUNE 15, 1949. REHEARING DENIED JULY 14, 1949.
 STATEMENT OF FACTS BY DUCKWORTH, CHIEF JUSTICE.
Mrs. Mamie C. Maddox, Mrs. Willie Mae Howell, and J. U. *Page 598 
Grimsley filed in the Superior Court of Decatur County, Georgia, a petition, against T. F. Willis, M. L. Willis, Hershel C. Floyd, and Joshua Mention, which as amended alleged: The petitioners, Mrs. Mamie C. Maddox and Mrs. Willie Mae Howell, are the owners and in possession of a certain tract of land located in the City of Bainbridge, Decatur County, Georgia, known as the Bon Air Block, comprising The Gilbert Hotel, Felty's Gift and Jewelry Shop, Lovett's retail grocery store, Bon Air Barber Shop, Grimsley Drug Company, and Francken's Department Store, which tract of land and improvements thereon are bounded on the south by Water Street and property of T. F. Willis, west by West Street, north by property of DesVerges and J. U. Grimsley, and east by property of J. U. Grimsley and the defendant, T. F. Willis. The petitioner, J. U. Grimsley, is the owner and in possession of a certain lot, together with improvements thereon, located in the said City of Bainbridge and described as follows: "All of that tract or parcel of land in the City of Bainbridge, Decatur County, Georgia, described as follows: Commencing at a point on the west side of Broad Street at the southeast corner of the brick store building of J. D. Bower, and running in a western direction one hundred and twenty-four (124) feet parallel with the southern boundary of said store building, and thence south fourteen (14) feet, thence east thirty-seven and two-tenths (37.2) feet, thence in a southeasterly direction seventy-one and two-tenths (71.2) feet, thence east sixteen (16) feet to a sidewalk, thence north twenty-eight and eight-tenths (28.8) feet to starting point, being bounded on the north by property of J. D. Bower, on east by Broad Street, on south by easement and property of Mrs. Mamie C. Maddox and Mrs. Willie Mae Howell, and more fully described in a certain plat drawn by G. S. Tucker, C. E., August 2d 1948, and to which reference is made." The defendant, T. F. Willis, claims the title and ownership of a certain lot with improvements thereon in Bainbridge, known as the Belcher Block, at the corner of Water and Broad Streets, bounded on the east by Broad Street, south by Water Street, west by the property of the petitioners, Mrs. Maddox and Mrs. Howell, and on the north by the property of J. U. Grimsley and the petitioners, Mrs. Maddox and Mrs. Howell. There is a fourteen-foot-wide easement for an alley *Page 599 
and an alley fourteen feet wide, running from east to west between West and Broad Streets, beginning on the west side of Broad Street and running in a westerly direction over the north side of T. F. Willis' above-described property and on the south side of J. U. Grimsley's above described property, and thence westerly through Mrs. Mamie C. Maddox's and Mrs. Willie Mae Howell's above described property to the east side of West Street, a map more fully showing the same being attached to the petition as Exhibit "A" and made a part thereof. The said alley with the same roadbed is located through improved land, has been in the continuous and uninterrupted use by the petitioners, their predecessors in title, their tenants, associates, and the general public for more than twenty-five years, and the petitioners and they have kept the said roadbed in a good state of repair. The defendant, T. F. Willis, has recently begun and is now actively, by and through his agents and employees, the other defendants named herein, in the process of erecting and constructing a brick building facing east on Broad Street and across the east end of said alley, which brick building will, if not stopped, come within three feet of entirely closing, obstructing, and blocking the entire east end of the said alley and make it impossible for the petitioners, their tenants, associates and the general public to have the further use and enjoyment of the said alley between Broad and West Streets. The defendant, T. F. Willis, has not given to the petitioners the thirty days' written notice or any other notice of his intention to close the said road or alley. The petitioners have notified the said Willis that they object to his having the said obstruction placed in the said alley, through his attorneys, Messrs. Conger Conger, and his brother, M. L. Willis, the latter of whom the petitioners are informed was left in charge of the said construction for T. F. Willis; but both of them refuse to have the erection and construction of the said building across the east end of the said alley discontinued, and in fact the workmen are actively continuing in the building, construction, and erection of the said obstruction and will so continue and close the east end of the said alley if the defendants are not restrained, enjoined, and prevented from doing so. The petitioners are informed and believe that the defendant, T. F. Willis, is and will be absent from Decatur County for the next several *Page 600 
days, so that any order passed upon this application cannot be served upon him, and the petitioners are further informed and believe that he has either contracted with or employed his said brother, Hershel C. Floyd, and Joshua Mention, all of the City of Bainbridge, Georgia, to obstruct the above-mentioned alley and erect the said building across the same, and for said reasons they are named defendants herein, in order that they may be served with a copy of the petition and any order passed upon the same to also prevent them, as the agents or employees of the said Willis, from completing the structure which they have commenced and are erecting across the said alley for the said Willis. If the said Willis, his agents and employees, are not prevented from so closing the eastern end of the said alley, the petitioners, their tenants, associates, and the general public will be prevented from using the said alley as a passageway, causing irreparable damage to the petitioners and to their said abutting property.
The petitioners and their predecessors in title have been in the open, uninterrupted, and continuous use of the said alley as a means of ingress and egress to and from their said adjoining property for more than twenty-five years and the said obstruction which the defendants are in the act of placing across the alley will render the alley or private way unfit for further use. If the defendants are not enjoined and restrained from the further obstruction of the alley, they will completely obstruct and block the passageway through the same adjoining the petitioner's property, and the petitioners will not be able to continue their use and enjoyment of the same as they have heretofore done for more than twenty-five years, and the same will cause them irreparable loss and damage. The closing of the alley is and will be a continuing trespass and nuisance and injurious to them and to their adjoining property and has caused and will cause them irreparable loss and damage. They have no adequate remedy at law to prevent the further obstruction of the alley, which is a continuous nuisance and trespass; and to prevent a multiplicity and circuity of lawsuits the court should enjoin the defendants from further obstructing the alley and causing irreparable loss and damage to the petitioners and their property. The said defendants have, without any legal authority, piled upon the southern side of the said alley and upon Mrs. Maddox's and Mrs. *Page 601 
Howell's land, as hereinbefore mentioned, against the north side of the said Bon Air Hotel building, against the north side of the store designated as Francken's Department Store in exhibit attached to the petition, a large quantity and pile of brick which they were using in the erection of the said building over the eastend of the alley. They have also piled a large pile of gravel on the west side of the petitioner Grimsley's land, hereinbefore described, which they were using in the erection of the said building over the east end of the alley. They are keeping the said brick and gravel at the said locations, and this is preventing the petitioners and their tenants from access to their said property for their use, repair, and protection of the same, besides obstructing their use of the said alley. The brick, cement, mortar, gravel, and building materials, which the defendants with legal authority have located on the east end of the said alley, make it impossible for the petitioners, their associates, and the general public to drive any vehicles through the said alley or use it as a passageway and further prevent the petitioners and their tenants from being able to keep their plumbing, water and electric system, which are located in the said alley, repaired, all of which they have continuously and unrestrictively done without interruption for more than twenty-five years before the acts of the defendants herein complained of; and the said acts of the defendants make the petitioners' property less useful to them and more hazardous to fire, and are, therefore, a continuing nuisance and trespass to the petitioners and their property.
The prayers were: (a) for process; (b) that until the further order of the court the defendants, their servants, agents, and employees, be restrained and temporarily enjoined from erecting any obstruction in the said alley or in any way molesting it in any manner or interfering with the petitioners' free use and enjoyment of the same; (c) that the said alley be decreed to be a private way or public street and free from any future molestation by the defendants; (d) that the petitioners recover $1000 as damages already caused to them by the said past unlawful obstruction of the said alley by the defendants, and such other and further sums as may appear to the court and jury trying the case as meet and proper; (e) that a day be fixed upon which the defendants be required to show cause, if any they have, why the *Page 602 
order should not be continued in effect and they be temporarily enjoined as prayed until the final hearing of the case; (f) that a copy of the petition and the order of the court thereon be instantly served on the defendants in person; (g) that the petitioners have such other and further relief as to the court may seem reasonable and just; (h) that upon the final hearing the defendants be permanently enjoined from committing the acts herein complained of; (i) that the defendants be enjoined and restrained from keeping the said brick, mortar, gravel, and building materials upon the petitioners' said property and in said alley, and the said continuous nuisance be completely abated.
Upon the presentation of the petition the court issued an order temporarily enjoining the defendants as prayed.
The defendants filed an answer denying the allegations of the petition material to the relief sought.
The evidence adduced upon the interlocutory hearing was quite voluminous, but for the purpose of a decision here may be stated substantially as follows: In Bainbridge, Georgia, there is an area bounded on the east by Broad Street, on the south by Water Street and on the west by West Street. Fronting on the north side of Water Street and extending from Broad Street to West Street there is a series of stores. While referred to in the record as two blocks of stores, the "Bon Air Block" and the "Belcher Block," the stores constitute an unbroken row of buildings. The Belcher Block, so called, is on the east end of the block at the northwest corner of the intersection of Broad and Water streets and has two stores therein fronting on Water Street, Birdsey's Flour Store and the A. P. Grocery Store. The rest of the stores or places of business, comprising the Bon Air Block, front on Water Street, and consist of Felty's Gift Jewelry Shop, Lovett's Grocery Store, Grimsley's Drug Store, and the Gilbert Hotel on the second floor. It was stipulated by all parties that the Belcher Block as described in the petition is owned by the defendant Willis, and that the Bon Air Block as described in the petition is owned by the petitioners, Mrs. Maddox and Mrs. Howell. Back of these stores and places of business there is a passageway, which is shown by a plat introduced in evidence and as to which William H. Rowe Jr., the civil engineer who made it, testified: "The correct width of the drive *Page 603 
over the sidewalk from Broad Street is 15 feet 8 inches. The next measurement 30 feet and 2 inches is from wall to building. The property known as the Raymond Powell building is to the right, and south of that on the plat is the Willis property operated by the flour store." The building referred to as the "Raymond Powell building" is shown to be the property of the petitioner, J. U. Grimsley, and it was stipulated between the parties that he is now the owner thereof. This property is north of the passageway behind the stores hereinbefore mentioned and is opposite the Grimsley Drug Store, Francken's Department Store, and the property of the defendant, T. F. Willis. The witness further testified: "The next measurement from building to building is 58 feet 10 inches. The next measurement is 28 feet 4 inches. When you get to this point you pass the Bainbridge Hardware Company. There is a smaller building right back there, and the distance there is 34 feet. The next distance is from the hotel property over to the fence, at the end of the fence line, and it is 28 feet. The next measurement from the hotel to the fence is 42 feet 9 inches. The next measurement is 41 feet 3 inches. The next one is 39 feet. The next measurement is 29 feet 4 inches. The next measurement is 27 feet 10 inches. The measurement of the driveway from West Street going into this area is 30 feet 9 inches." It was shown that Broad Street was paved in 1912, and that, as the curb at the sidewalk was higher than the street level, a drive-in was sloped from the sidewalk to the street, and this was, as testified by the aforesaid witness, 15 feet 8 inches wide. The petitioners introduced in evidence a plat prepared in 1938 by G. S. Tucker, a civil engineer, and Mrs. Maddox testified that it was a good representation of the area behind the stores and that "There is a driveway from the Broad Street over the sidewalk or abutment which comes from the inside across the sidewalk, which measures 14 feet and 6 inches wide. . . From the north corner of the Belcher Building to the south corner of the Grimsley property is 30 feet 7 inches. From the north corner of the Belcher Building to the north corner of the new building that they are putting up is 27 feet 2 inches, and from the north corner of the new building to the south corner of the new building is 3 feet. That 3 feet is the little skip they have left where they are not putting up the building." She *Page 604 
gave various measurements and testified that the average width of the alley, judging by the ruts or worn places by travel, is 14 feet 7 inches and "as to the measurements of that driveway over the sidewalk on Broad Street, we did not measure from the outside where you could not drive, but from the inside it was 14 feet 6 inches. I did not intend to testify that it was about a foot on each side where you could not drive, where the slope was. . . . From curb to curb it would be 15 feet or something. I could not say exactly. . . I will say that that is somewhere between 30 feet and 2 inches and 30 feet and 7 inches between the points you mention [the distance from curbing to curbing on Mr. Willis' land to Dr. Grimsley's building]." Within the entrance from Broad Street the defendant Willis had begun the erection of a building and had piled materials therein, and a photograph introduced in evidence shows a small fragment or portion of a prospective brick wall just within such entrance and apparently obstructing an approach from Broad Street over the slope portion of the sidewalk, and as to which the petitioner, Mrs. Maddox, testified that it was the beginning of an alley not more than fifteen feet in width and continuing throughout the passageway behind the stores and places of business fronting on Water Street.
The record is without evidence as to the legal title at any time to the passageway behind the stores. It was established by numerous witnesses that it had been used by the public for many years, some testifying that within their knowledge it had been used for 40, 48, 50, and 60 years, respectively. Regardless of whether or not there may be discrepancies between the testimony of Mrs. Maddox and the witness Rowe as to the width of the passageway at various points, and notwithstanding the fact that the area was referred to by many witnesses as an "alley," it was shown that its use was not confined to any specific fifteen-foot alley, but it was traversed indiscriminately as to width, not only by pedestrians but by automobiles, trucks, and other vehicles. While it was contended by the petitioners that they had acquired an easement to the use of an alley claimed to be within the area, not over fifteen feet in width and extending from Broad Street to West Street, it is deemed unnecessary to set forth any evidence, as a basis for determining that question, *Page 605 
for reasons which appear in the opinion. It was also contended by the petitioners that, if they had not established a prescriptive right to the use of the claimed alley, the entire area had become a public thoroughfare by dedication and user. In this respect the following evidence was adduced: Mrs. Maddox testified: "I don't ever know of the time that that alley was not open to travel. . . It has been kept in reasonable repair all this time. The city has filled in some washes there at different times and I think our hotel tenants have filled in some washes there. . . I could not say we filled them [the washes] in, and I don't recall ever hiring anybody to fill them in." J. U. Grimsley testified: "That alley has been kept in repair. The city has repaired it some of the time. I guess the city did it. I saw a truck there throwing dirt in it. I have asked the city to repair it, and they have repaired it on my request. I have never myself repaired it, but I have asked the city officials to have it repaired, and they did, over a period of 25 years. . . I have seen the city scraper in there. . . The only repairs that have been made were those that were made by the city." C. S. Haddon testified: "I have acted as general manager for the Belchers in handling all of their property and particularly what is known as the Belcher property, the Belcher Block, now owned by T. F. Willis, for a number of years. . . To my knowledge this alley has been kept in repair by the city 25 or 30 years. I have seen the city with machinery or otherwise repair this alley all that length of time. . . Dirt was dumped in the alley by the city, and at one time they put a tractor in there and leveled it off. As far as I know the city has done all the repairs that has been done in the alley for the last 42 years. That is true in reference to the crossing over the Belcher property." Raymond Powell testified: "I think it was two different times I got the city to unload some dirt there. Wes Weidner was on it at that time. It got to where there was a mud hole there right at the back door, and he brought some brickbats or something in the city truck and dumped them right at that back door. The city did that work. That is the only time I know about during the time I was occupying the building." B. W. Harrell, superintendent of water and sewers for the city, testified: "I have known of the city going back there and hauling dirt and brick *Page 606 
and otherwise repairing that alley. I was at one time superintendent of streets, and at that time I hauled some dirt and brick and things like that in there after water had washed gullies down there, and out on Broad Street, out at the end of the street. I did that so people could unload their goods back there. . . . I would say that the city employees have kept the alley passable for ten years or more." R. T. Humphrey, Chief of Police, testified: "I have known of the City of Bainbridge repairing that alley. I have seen dump trucks dumping dirt in those ditches there, right behind Raymond's place and where the power company had their storage rooms, filling up the alley." R. A. Griffin, Mayor of Bainbridge, testified: "I instructed the street scraper to go in there because it was in bad shape, and the street chairman, who is Mr. M. L. Willis, I understand told them that he did not want it scraped, and as he was street chairman I figured it was his department. . . and I did not argue with him about fixing it at all. . . It is correct that M. L. Willis, whom I have just mentioned, is a brother of T. F. Willis." I. J. Harrell testified: "It has been kept in fair repair. It has been passable, and the city has worked on it some themselves with a road machine to my knowledge, and dumped a load of gravel and stuff in there." R. Y. Howell testified: "The city has done some repairs to it. I would not be able to say how often, but they have gone in and filled in some washouts and I have seen road machinery in there scraping it. The city has frequently gone in there within the last year or year and a half, to my knowledge. It has been repaired from time to time."
The court refused to grant an injunction, and the exception here is that judgment.