## 37079. SLAUTTERBACK et al. v. INTECH MANAGEMENT SERVICES, INC. et al.

SMITH, Justice.

Appellants assert that the trial court erred in granting appellees' application for interlocutory injunction and in denying theirs. We affirm.

The trial court made the following findings of fact: Independent Truckers Insurance Underwriters, Inc. (Independent Truckers) and American Owner/Operator Association, Inc. (Association) were corporations organized by appellant Slautterback. The corporations were engaged in the business of selling property and casualty insurance to independent owner/operators of long-haul trucks. The policies were issued by various insurance companies, with the corporations acting as broker. In June, 1975, Independent Truckers procured the registered service mark "American Owner/Operator Underwriters, Inc."[1] together with a logo incorporating the initials

---

[1] Apparently, Independent Truckers was marketing its insurance under this name.

"AOO." Another service mark was obtained in September, 1975, which incorporated the same words as the service mark referred to above, but used a different arrangement and did not include the logo.

During 1976, several of the insurance companies that issued the policies of Independent Truckers alleged that Mr. Slautterback failed to remit premiums due on certain policies. These allegations led to litigation which resulted in consent judgments against Independent Truckers and Mr. Slautterback in amounts exceeding $500,000. The insurance programs were cancelled.

Mr. Slautterback obtained a new program of insurance with Frank Feit and Associates, Inc., and organized a new corporation, American Owner/Operator Underwriters, Inc. (Underwriters). In furtherance of the reorganization, Independent Truckers and Underwriters entered into an agreement on August 24, 1976, under which Independent Truckers conveyed to Underwriters, in exchange for royalty payments, the exclusive right to use the service marks. The agreement provided in part: "Independent [Truckers] hereby grants to American [Underwriters] the exclusive, non-transferable license to use the trade name, trademark and registered service mark and logo "American Owner/Operator Underwriters, Inc." as registered under the attached Exhibits "A" and "B", for the operation of a long-haul owner/operator truck insurance program, together with related goods and services, for a period of 5 years, beginning August 24, 1976, up through and inclusive of August 23, 1981, upon the terms and conditions hereinafter set forth . . .

"In consideration for the license by Independent to American of said service mark and logo, American agrees to pay Independent 2-1/2% of gross monthly premiums received by American from the sale of physical damage, cargo and liability insurance sold by or through American and its authorized and duly licensed State Agents, to long-haul owner/operator truckers. Payments shall be due immediately upon execution of this agreement and shall be paid by American to Independent on or before the 15th day of November, 1976, and continuing on the 15th of each month thereafter, during the term hereof . . .

"American is granted the right to grant sublicenses for the use of said trademark, service mark and registered logo, to such other persons as it deems advisable in its sole discretion, without the payment of any additional compensation to Independent."

Subsequent to the service mark agreement, Underwriters entered into a number of exclusive agency agreements ("state agent contracts") with various insurance agencies throughout the nation. These contracts, entered into at a time when Mr. Slautterback was

president of both Underwriters and Independent Truckers, state that "[Underwriters] is the owner as assignee of the registered service mark 'American Owner Operator Underwriters' and accompanying logo . . ." The contracts could be terminated "upon 30 days written notice by either party."

On June 23, 1978, the insurance program offered by Underwriters was terminated by Frank Feit and Associates, which had accused Mr. Slautterback of failing to remit premiums. Due to this and other problems, Underwriters sought the assistance of Intech Management Services, Inc. (Intech). Intech agreed to perform services on behalf of Underwriters, as well as provide loans to the beleaguered corporation. In exchange, Underwriters agreed to pay Intech certain fees and commissions and to repay the loans plus accrued interest. The agreement led to a series of demand notes, secured by a general lien upon and assignment of all agreements to which Underwriters was a party as of August 1, 1978, concerning Underwriters' right to offer or sell, or to grant to any person the right to offer or sell insurance contracts. Some of these notes were negotiated by Intech to an affiliated holding company and were secured by a pledge of all of Underwriters' stock.

In March, 1980, Underwriters went into default on the demand notes. Assets of Underwriters were assigned to Intech in satisfaction of the outstanding debt. Intech, in effect, took control of the corporation. Appellant Slautterback resigned his position as president.

After Intech gained control of Underwriters, the royalty payments for the service marks held by Independent Truckers ceased.

As indicated above, the Association is also engaged in marketing insurance. It is, however, a separate entity from Underwriters. Although reference is made to the Association in the state agent contract, it is not a party to the agreements. Neither is Independent Truckers.

Appellees brought an action alleging that after Mr. Slautterback lost control of Underwriters, he and the Association began a "campaign of correspondence" with state agents for the purpose of inducing them to breach or terminate their state agent contracts with Underwriters. They prayed, inter alia, that "the Defendants, their officers, directors, stockholders, agents, employees and individuals acting in concert with them be temporarily restrained and preliminarily and permanently enjoined: (a) from soliciting or otherwise approaching the State Agents or any of them in an effort to induce the State Agents to breach their contracts with Intech or to enter into agency contracts or similar contracts with the Defendants

or any other corporations or other entities, whether or not affiliated with the Defendants, and (b) from representing to any individual or entity, including but not limited to the State Agents, that Intech or Underwriters or the State Agents, or any of them are not authorized to use the Service Marks or are subject to litigation for any such use..."

Appellants filed several counterclaims, one of them alleging that Underwriters has breached its licensing agreement with Independent Truckers regarding the service marks. They prayed that Underwriters be temporarily and permanently enjoined from using the service marks.

The trial court ordered that appellants be temporarily enjoined from communicating with Underwriters' state agents, "whether by letter, mailgram, telegram, telex, telephone, oral conversation, or through any other means, with respect to any of the following representations or subjects: (1) urging any of the listed individuals or entities to terminate their contractual relation or breach their contractual obligations with the plaintiffs; (2) threatening any of the listed individuals or entities with litigation if they do not end their usage of the name "American Owner/Operator Underwriters, Inc." in connection with their businesses; (3) representing to any of the listed individuals or entities that the plaintiffs or the listed individuals or entities do not have the right or authorization to use the name "American Owner/Operator Underwriters, Inc." in connection with their businesses; (4) representing that any of the listed individuals or entities should stop doing business with the plaintiffs; (5) inducing or urging any of the listed individuals to enter into contractual relations with any of the defendants for the purpose of soliciting or writing insurance for long-haul independent owner/operator trucking concerns; (6) offering, soliciting or writing any form of insurance for long-haul independent owner/operator trucking concerns through any of the individuals, businesses, corporations or other entities listed above." The court also ordered "that the Defendants' Motion for a Preliminary Injunction [be] denied in all respects." It is from these orders that appellants bring their appeal.

" ' "Upon hearing for an interlocutory injunction, if the evidence 'for the complainant is strong, and that for the defendant weak, or even if it be in practical equipoise, the injunction should be granted or refused according to the peculiar circumstances of the particular case. There should be a balance of conveniences, and a consideration whether greater harm might result from refusing than from granting the relief prayed for. If the grant of an injunction in such a case would operate oppressively to the defendant, the restraining order should be refused; but if it appears that if the injunction were denied the

complainant would be practically remediless in the event he should thereafter establish the truth of his contention, it would be strong reason why interlocutory relief should be granted. The delay to one party would not counter-balance the irreparable injury which might flow to the other, if the chancellor made a mistake in passing on the disputed issue of fact. Under such circumstances it would generally be wise exercise of discretion to preserve the right by preserving the status.' *Everett v. Tabor,* 119 Ga. 128, 130 (46 SE 72). See *Jones v. Lanier Development Co.,* 188 Ga. 141, 145 (2 SE2d 923); *Ballard v. Waites,* 194 Ga. 427, 429 (3) (21 SE2d 848); and *Maddox v. Willis,* 205 Ga. 596 (5) (54 SE2d 632), where the foregoing rule has been applied to various factual situations." *Stephens v. State Hwy. Dept.,* 223 Ga. 713 (1) (157 SE2d 751).' *Steenhuis v. Todd's Construction Co.,* 227 Ga. 836 (183 SE2d 354)." *Nunn Better Enterprises v. Marietta Lanes, Inc.,* 230 Ga. 230, 231-232 (196 SE2d 404) (1973). Under the applicable standard of review, the trial court's order must stand.

a) "It is clearly settled in Georgia that the exercise of discretion by the lower court in granting and continuing [preliminary] injunctions will not be interfered with in the absence of manifest abuse. *Code* § 55-108." *Lawrence v. Harding,* 225 Ga. 148, 150 (166 SE2d 336) (1969). In the instant case, the evidence and the inferences to be drawn therefrom are conflicting. See *Davis v. Miller,* 212 Ga. 836, 840 (96 SE2d 498) (1957). The trial court was authorized to find, and did find, that appellant Slautterback had engaged in a malicious, unjustified campaign to destroy the Underwriters' sales network. See *Architectural Mfg. Co. v. Airotec, Inc.,* 119 Ga. App. 245, 248 (166 SE2d 744) (1969). Such a campaign could effectively eliminate Underwriters from the marketplace. Needless to say, the remedy at law, under such circumstances, would be inadequate. See *Gray Lumber Co. v. Gaskin,* 122 Ga. 342 (50 SE 164) (1905). The trial court's effort to preserve the status quo pending the outcome of the litigation was an appropriate response.[2]

b) Under the evidence presented, the trial court was authorized to conclude that appellants had abandoned the service marks and that the doctrine of "licensee estoppel" was inapplicable. See Haymaker Sports, Inc. v. Turian, 581 F2d 257 (C.C.P.A. 1978); Donald F. Duncan, Inc. v. Royal Tops Mfg. Corp., 343 F2d 655 (7th

---

[2] We note that Mr. Slautterback indicated he would have "no difficulty" in finding agents to service his organization in the meantime. The "balance of conveniences" clearly favors appellees as " . . . greater harm [would more likely] result from refusing than from granting the relief prayed for . . ." *Nunn Better Enterprises v. Marietta Lanes, Inc.,* supra at 231.

Cir. 1965). However, even if these conclusions are ultimately determined to be erroneous, appellants have not shown that they lack an adequate remedy at law. Moreover, they have not demonstrated that the "balance of conveniences" lies in their favor. Under these circumstances "this court will not control the discretion vested in the trial judge in denying an interlocutory injunction. Code § 55-108." *Levenson Inv. Co. v. Whitehead,* 230 Ga. 680, 681 (198 SE2d 682) (1973); *Nunn Better Enterprises v. Marietta Lanes, Inc.,* supra; *Massee-Felton Lumber Co. v. Sirmans,* 122 Ga. 297, 301 (4) (50 SE 92) (1905).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 7, 1981.

*Dennis M. Hall,* for appellants.
*Rogers & Hardin, C. B. Rogers, Phillip S. McKinney,* for appellees.