38073. GEORGIA GAZETTE PUBLISHING COMPANY et al. v. RAMSEY.

Weltner, Justice.

A practicing dentist in the City of Savannah filed suit against a newspaper, alleging a violation of his right of privacy by the publication of articles to the effect that the dentist was a suspect in a

murder case, and that certain affidavits reflected adversely upon his private and professional conduct.

Thereafter, the dentist obtained a protective order from the superior court, which prohibits the newspaper from disclosing any information obtained through discovery without following a procedure of notification of intent to disclose and obtaining permission of the court, in the event objection is filed. From the order as amended, the newspaper brings this interlocutory appeal, which this court granted, along with its motion to expedite.

At the outset, we need to state what this case is *not*. It is not an action for libel, but one for invasion of privacy; it is not a criminal prosecution, but a civil action initiated by the dentist seeking the recovery of $2.4 million dollars. There is no indication in the record that he is the subject of a grand jury investigation, and this case does not involve the classic confrontation of "free press versus fair trial," as frequently arises in notable criminal prosecutions. Hence, the balancing requirement of free speech and the protection of a criminal defendant's rights to a fair and impartial jury is not here present.

Nor do we have before us a question of the disclosure of matters of public record, inasmuch as the restraining order issued by the trial court pertains only to discovery materials, which are not matters of public record until filed with the court, in cases of interrogatories and requests for admissions, or opened by order of court in the case of depositions. Code Ann. § 81A-126 (c). See generally Code Ann. §§ 81A-126—137.

Instead, the case presents a compelling question of the ambit of the First Amendment to the Constitution of the United States, and of Art. I, Sec. I, Par. IV of the Constitution of Georgia, Code Ann. § 2-104, which provides: "No law shall ever be passed to curtail, or restrain the liberty of speech, or of the press; any person may speak, write and publish his sentiments, on all subjects, being responsible for the abuse of that liberty."[1]

We must now decide whether the restraining order, carefully and precisely drawn by the learned trial judge, runs afoul of these constitutional protections.

We have carefully reviewed the briefs filed on behalf of the parties, and the opinion in *In re Halkin,* 598 F2d 176 (D.C. Cir., 1979), upon which the trial judge relied, as one of the few authorities relevant to cases of this type.

---

[1] This section has remained unchanged in Georgia since the Constitution of 1877. It is also interesting to note that Art. LXI of the Constitution of 1777, providing "[f]reedom of the press and trial by jury to remain inviolate forever," predated the Bill of Rights by 14 years.

We conclude that the protections of our own Constitution must remain paramount, to which must yield anything to the contrary found in our statutory law, or in the decisions of this or other jurisdictions, excluding only the highest court of the land. Under its plain language, the newspaper is empowered to write and speak and publish on all subjects, ". . . being responsible for the abuse of that liberty" in the nature of an action for libel or malicious abuse of process, or for invasion of privacy, *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190 (50 SE 68) (1904), — this last being the basis of the dentist's complaint.

Accordingly, we find the restraining order, however well-intentioned, to be an unwarranted restraint upon the newspaper's liberty of speech and of the press.

*Judgment reversed and case remanded. All the Justices concur, except Hill, P.J., who concurs in the judgment only, and Smith, J., who dissents.*

DECIDED NOVEMBER 13, 1981 —
REHEARING DENIED NOVEMBER 24, 1981.

*Brannen, Wessels & Searcy, Darlene Y. Ross, Charles Mikell, Jr.*, for appellants.

*Stanley E. Harris, Jr., Alexander L. Zipperer*, for appellee.

SMITH, Justice, dissenting.

Contrary to the view of the majority, I do not believe the case at bar can properly be resolved by resort to the "plain language" of Code Ann. § 2-104. The issue presented defies simplistic solution.

If an individual truly "is empowered to write and speak and publish on all subjects" under the Georgia Constitution, it necessarily follows that it would be constitutionally impermissible to impose a prior restraint on the publication of obscenity. However, *Sanders v. State of Ga.*, 231 Ga. 608, 612 (203 SE2d 153) (1974) states the following: "Free expression is rooted deeply in our way of life and cannot be suppressed through statutes which compromise the exercise of this freedom. This does not mean that one is free to express obscenity. Injunctive procedures are available to stop obscene expressions. [Cits.]"

If an individual truly "is empowered to write and speak and publish on all subjects" under Code Ann. § 2-104, it necessarily follows that it would be constitutionally impermissible for a trial court to issue an injunction restraining a commercial investigative and reporting company "from reporting, releasing, printing or

disclosing any further information concerning [a former employee] to the effect that he was 'dismissed for dishonesty and would not be eligible for rehire.' " *Retail Credit Co. v. Russell,* 234 Ga. 765, 777 (218 SE2d 54) (1975). However in *Retail Credit* (Id. at 779-780), this court held: "It must be remembered that 'it has never been held that all injunctions (against publication) are impermissible.' [Pittsburgh Press Co. v. Pittsburgh Comm. on Human Relations, 413 U. S. 376, 390 (1973)]. The order of the trial court tested by applicable standards did not fall within the prohibited area of a prior restraint, and that court did not err either procedurally nor substantively in entering it." See also *Slautterback v. Intech Management Svcs.,* 247 Ga. 762 (279 SE2d 701) (1981).

If a newspaper truly "is empowered to write and speak and publish on all subjects," it necessarily follows that it would be constitutionally impermissible to prevent the publication of the sailing dates of transports or the number and location of troops during wartime. However, in Near v. Minnesota, 283 U. S. 697, 716 (51 SC 625, 75 LE 1357) (1931), the U. S. Supreme Court stated: "No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops." The First Amendment, like Code Ann., § 2-104, speaks in absolute terms: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . ." The U. S. Supreme Court, however, has recognized that the First Amendment cannot sensibly be viewed as prohibiting all prior restraints on speech. The majority in the instant case provides no explanation for its outright rejection of the federal model.

I believe that in reaching its decision the majority has failed to consider relevant precedents of this court. Furthermore, I believe the experience of the federal courts in the First Amendment area may provide guidance in the construction of our state constitution's freedom of speech provisions.

One recent federal opinion reasoned as follows: "[We must] recognize the relevant but not determinative fact that litigants, their attorneys, and the press would have a strong interest in being able to convey and receive truthful reports of public criminal and civil judicial proceedings, see Richmond Newspapers, Inc. v. Virginia, 448 U. S. 555, 595-96 (1980) (Brennan, J., concurring in the judgment), and that restraints on the transfer of newsworthy information of this nature would be subject to the highest degree of protection. See Nebraska Press Assn. v. Stuart, 427 U. S. 539, 559 (1976). When information is produced during civil discovery, however, the First Amendment interests and consequently the degree of severity of our scrutiny of the restraints are different.

"During discovery, information is produced through compulsion in order 'to narrow and clarify the basic issues . . . and ascertain the facts,' Hickman v. Taylor, 329 U. S. 496, 501 (1947), and thereby to make the subsequent trial 'a fair contest with the basic issues and facts disclosed to the fullest practicable extent.' United States v. Proctor & Gamble Co., 356 U. S. 677, 682 (1958). In pursuit of these aims, discovery rules are liberal, giving parties broad powers to gather information. As a result, a deponent may be obliged to reveal information that will not be admissible at trial. Unlike evidence at trial, it has not passed the strict threshold tests of relevance and admissibility, yet it has been compelled by dint of legal process. The information revealed may be irrelevant, prejudicial, or pose an undue invasion of an individual's privacy.

"Such undigested matter, forced from the mouth of an unwilling deponent, is hardly material encompassed within a broad public 'right to know.' Its disclosure would not advance the informed civic and political discussion that the First Amendment is intended to protect. We do not see present in the case of civil discovery those interests that make publicity in a criminal trial an important 'safeguard against any attempt to employ our courts as instruments of persecution', In re Oliver, 333 U. S. 257, 279 (1948). Nor can the discovery processes lay claim to the long tradition of openness enjoyed by criminal or civil trials. Compare Richmond Newspapers, Inc. v. Virginia, supra, 448 U. S. at 564-69 (opinion of Burger, C.J.). We conclude, therefore, that although there is a First Amendment interest in information produced at trial that warrants full protection, a judicially-powered process compelling information that has not yet passed through the adversary-judicial filter for testing admissibility does not create communications that deserve full protection.

"Having first recognized the full scale First Amendment interest in reports of public judicial proceedings, and also then having taken note of the series of factors distinguishing information developed during pre-trial discovery, we conclude that notwithstanding such factors the communications produced during discovery are not totally undeserving of protection under the First Amendment. Individuals have a well-recognized interest in self-expression, First National Bank of Boston v. Bellotti, 435 U. S. 765, 777 n. 12 (1978); Time, Inc. v. Hill, 385 U. S. 374, 388 (1967), or, to turn the coin over, there is a First Amendment concern that the government not lightly engage in any restraints on communication, particularly when the order is issued prior to the expression taking place. Nebraska Press Assn. v. Stuart, supra, 427 U. S. at 556. Moreover, some of the information produced during discovery

presumably will be relevant at trial, newsworthy, and potentially subject to greater protection under the First Amendment.

"The products of discovery, therefore, embody significant but somewhat limited First Amendment interests. The Supreme Court has recognized that the special characteristics of the particular type of speech at issue may render inapplicable the prohibition against prior restraints. Virginia Pharmacy Board v. Virginia Consumer Council, 425 U. S. 748, 771, 772 n. 24 (1976) (commercial speech may not be subject to prohibition against prior restraints). Accordingly, we scrutinize the restraints imposed by protective orders under a less severe standard than that ordinarily applied to prior restraints.

"This result allows the discovery process to continue to serve its function while also allowing judges efficiently and effectively to fulfill their duty to protect the litigants' right to a fair trial and right to privacy. If the trial judge were required to allow virtually full publicity of utterances forced from the mouth of an unwilling defendant, even if irrelevant or inadmissible, he might well refuse to allow the discovery to proceed at all when the interests of a fair trial or personal privacy are seriously threatened. The alternative of having to supervise personally each question and response when interests of privacy or fair trial are at stake would prevent discovery from accomplishing its purpose of expediting the trial process. While allowing discovery to proceed with greater speed and greater scope, protective orders can also give judges the discretion to exercise their constitutional duty to protect litigants' rights to a fair trial and privacy.

"The standard we apply to review the validity of a restraint on communications produced during discovery is similar to the standard applied to prior restraints but less stringent due to the more limited nature of the First Amendment interests at stake. We look to the magnitude and imminence of the threatened harm. The effectiveness of the protective order in preventing the harm, the availability of less restrictive means of doing so, and the narrowness of the order if it is deemed necessary. Our adaption of this standard in a civil discovery context, however, allows a court to be slightly less severe when considering the degree and imminence of the harm that might ensue if communications to the press are not prohibited. Thus, we consider the magnitude of the harm threatened by disclosure and the likelihood of that harm occurring, but we think these considerations are best applied on a sliding scale: as the potential harm grows more grave, the imminence necessary is reduced. For example, a threatened material harm to a defendant's deep-seated interest in an impartial jury in a civil trial need only be reasonably likely. A claimed injury to less important interests, by contrast, would

need to be serious and unmistakable. In general, then, we find the appropriate measure of such limitations in a standard of 'good cause' that incorporates a 'heightened sensitivity' to the First Amendment concerns at stake, see Bruno & Stillman, Inc. v. Glove Newspaper Co., 633 F. 2d 583, 596 (1st Cir. 1980); Brink v. Delesio, 82 F.R.D. 664, 677-78 (D. Md. 1979) . . ." In re San Juan Star Co. v. Barcelo —— F2d —— (Slip Opinion, No. 81-1086) (1st Cir. Oct. 26, 1981).

The court in San Juan realized what the majority in the instant case apparently does not — that the question of whether parties in a given case should be prevented from publishing information received in the course of discovery presents a complex issue and necessitates a balancing of competing interests.

The trial court's order provides: "a) That Defendant Georgia Gazette Publishing Company shall not reproduce, quote nor refer to any information obtained solely through discovery in this litigation for the purpose of any oral or written publication by or on behalf of any defendant . . . "h) Provided that, if any party wishes to publish or otherwise disseminate any information procured solely through discovery which is covered by the terms of this order, that party shall first notify the opposite party or parties to that effect in writing, setting out with particularity the specific information that party intends to disseminate. Within five days of the receipt of such notice, the opposite party may apply to this court for an order forbidding dissemination of the particular information so specified, the burden resting upon that party to show the continued necessity of such an order. The party opposing the dissemination shall submit with his application for such order a rule nisi order setting his motion for a hearing. Until such a request for an order forbidding dissemination is denied by the court, no information covered within the terms of this order shall be disseminated. If, however, the opposite party does not request an order within five days of receipt of the notice, dissemination of the information specified in the notice shall no longer be limited by this order."[1]

Regrettably, the majority concludes that, regardless of the severity and certainty of the harm to occur upon publication of

---

[1] Paragraph "g" of the trial court's order states: "Excepted from the provisions of this order are: (i) Use of discovered material for purposes of this litigation by parties and counsel. (ii) Use of discovered material for review by witnesses who may testify for any party provided that party has notified the opposite party at least ten days prior to the date of the intended dissemination that the person may be used as a witness. (iii) Use in compliance with any valid subpoena served upon any party." Presumably, the trial court would undertake to balance the interests of the parties when appellants sought to publish information obtained solely through discovery.

information obtained through discovery, a trial court is powerless to act because of the "plain language" of Code Ann. § 2-104.[2] I do not believe this conclusion is sound. Surely it is not consistent with prior decisions of this court or with existing federal authority. I respectfully dissent.

---

[2] It is interesting to note that, under the Civil Practice Act, a trial court is empowered to order that "discovery not be had" where it is necessary to protect a party from "annoyance, embarrassment, oppression, or undue burden." CPA § 26 (c) (Code Ann. § 81A-126 (c)). Under the majority opinion, however, once the trial court permits discovery, the power of the court to protect the rights of the individual is irrevocably lost.