**THIRD DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 25, 2013**

# In the Court of Appeals of Georgia

A12A2407. DRAWDY CPA SERVICES, P.C. v. NORTH GA CPA   BA-056
    SERVICES, P.C., et al.

BARNES, Presiding Judge.

Drawdy CPA Services, P.C., and John T. Drawdy, Jr., ("Drawdy") appeal the trial court's order denying their motion for an injunction against North GA CPA Services, P.C. and Jamie Howell Pritchett ("Pritchett"). For the reasons that follow, we affirm.

Drawdy sued Pritchett, claiming she breached her employment agreement with him by creating her own CPA firm and then soliciting his clients. He sought injunctive relief against Pritchett to prevent what he contended was continuing misappropriation of clients information and trade secrets. Pritchett answered and counterclaimed for attorney fees under OCGA § 9-15-14, and several months later

Drawdy filed an "emergency motion" for injunctive relief to prevent Pritchett from accessing Drawdy's "client portals" and "siphoning off" Drawdy's clients.

The trial court held a hearing on the emergency motion. Both parties testified, and Pritchett called four witnesses, all of whom had been clients of Drawdy CPA but testified that they sought out Pritchett on their own after she started her own firm. One of those clients also testified that his company printed and distributed a direct market mailer for Pritchett to a list of 2,500 people who fit a particular demographic profile compiled by a third-party company. Additionally, Pritchett submitted 113 affidavits from clients of Pritchett's who were formally clients of Drawdy's, and who all verified that Pritchett did not solicit them to leave Drawdy. Drawdy submitted the affidavit of one of his clients who had received the direct mail flyer from Pritchett at his home address.

The trial court denied Drawdy's motion for injunctive relief. The court found that although Pritchett had inadvertently solicited one of Drawdy's clients via a mass market mailer, Drawdy had submitted insufficient evidence to establish that Pritchett violated her employment agreement or had deliberately solicited Drawdy's former clients. The court also concluded that Pritchett did not obtain client information that belonged to Drawdy, but accessed her clients' tax returns through a "client portal" on

Drawdy's website. Finally, the court noted, the tax returns and information contained in them belonged to the client, as Drawdy had admitted.

The trial court granted Drawdy a certificate of immediate review and Drawdy filed an application for interlocutory appeal in the Georgia Supreme Court. The Supreme Court transferred the application to this court, noting in an order that the denial of injunctive relief was ancillary to the underlying legal issues and thus that court's equity jurisdiction was not invoked. This court granted the application because the denial of a motion for interlocutory injunction is directly appealable under OCGA § 5-6-34 (a) (4). See OCGA § 5-6-35 (j).

Drawdy contends that the trial court erred in denying his motion for an injunction. "An interlocutory injunction is a device used to maintain the status quo of the parties pending final adjudication of the case," and should not be granted "except in clear and urgent cases where there is a vital necessity to prevent a party from being damaged and left without a remedy." (Citations omitted.) *Atlanta Area Broadcasting v. James Brown Enterprises*, 263 Ga. App. 388, 392-393 (587 SE2d 853) (2003). Whether to grant or deny an injunction rests in the sound discretion of the trial court judge, "according to the peculiar circumstances of the particular case." (Citations and punctuation omitted.) *Slautterback v. Intech Mgmt. Servs.*, 247 Ga.

3

762, 755-766 (279 SE2d 701) (1981). The appellate courts will not reverse a trial court's decision on a temporary injunction "unless there was no evidence upon which to base the ruling or it was based on an erroneous interpretation of the law." *Atlanta Area Broadcasting*, 263 Ga. App. at 393.

1. Drawdy contends first that the trial court erred in denying a temporary injunction because the non-disclosure covenant in Pritchett's employment agreement was reasonably designed to protect Drawdy's confidential business information accessible only to former employees of Drawdy. Drawdy testified that he had a "client portal" on his website to give clients access to their tax returns or other accounting information. Each client had a unique username and password that allowed him to access only that client's documents. After Pritchett left, Drawdy determined through a log-in history report that the client portals of multiple clients had been entered from the same computer, which turned out to be Pritchett's.

Pritchett admitted that she entered Drawdy's client portals with the express permission of her clients, who were formerly Drawdy's clients, to obtain copies of their tax returns. Drawdy's predecessor began using the portal system to save the expense and time of providing hard copies of tax returns to clients, to give them access to the returns at any time, and to allow them to share their access information

4

to a third party, such as a banker processing a refinancing application. Drawdy testified that the tax returns and accounting records accessible through the client portals belonged to both him and the client, and while he did not own the tax returns, he did own the portal. Drawdy testified that he would not provide former clients with copies of their tax returns unless they paid him $200 to access their client portal and retrieve their own tax documents, because he had no obligation to provide copies to his former clients, who could obtain their own copy from the I.R.S. for $57.

An injunction is proper to prevent a party "from being damaged and left without a remedy." *Atlanta Area Broadcasting*, 263 Ga. App. at 393. Drawdy testified that he had already shut down the portal system for former clients. Therefore, the trial court did not err in denying Drawdy's motion to enjoin Pritchett from using his client portals.

2. Drawdy contends the trial court erred in denying him a temporary injunction because "the processes by which [he] delivered clients services was [Drawdy's] confidential and proprietary information" protected by the Georgia Trade Secrets Act, OCGA § 16-8-13 (a) (4) (A). A computer program or data may be "trade secrets." *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 876 (2) (482 SE2d 498) (1997). But Drawdy has not alleged that Pritchett misappropriated the client portal software

5

itself. Further, while Drawdy testified that a client's financial statements and accounting documents were available through the client portal, Pritchett testified that she only used the portal to gain access to the tax returns of Drawdy's former clients. And as Drawdy admitted, the tax returns belong to the clients, not to him. The trial court did not abuse its discretion in denying a temporary injunction on this basis.

3. Drawdy alleges that Pritchett "committed the crime of computer theft when she entered Appellant Drawdy CPA's computer systems, through its client portal, without authority of Appellant Drawdy CPA and converted its property to her use[.]" At the hearing on Drawdy's motion for a temporary injunction, the trial court responded to that argument by advising Drawdy's counsel that he was doing his client a disservice by arguing criminal computer trespass, because the court did not see that as even a possibility.

Under OCGA § 16-9-93 (a) (3), a person commits the crime of computer theft when she knowingly uses a computer network without authority and with the intention of converting property to her use in violation of an agreement. Drawdy argues that Pritchett entered Drawdy CPA's computer systems through its client portal and converted its property to her own use. Pritchett testified that she never accessed the clients' files on Drawdy's network, and that she obtained the passwords

6

to the client portals from the clients, not through knowledge gained from her employment with Drawdy. Further, as Drawdy testified that he had shut down his former clients' portals, the trial court did not abuse its discretion in denying Drawdy a temporary injunction based on a crime of computer theft. See *Atlanta Area Broadcasting*, 263 Ga. App. at 393.

4. Finally, Drawdy asserts that the trial court erred in denying his motion for a temporary injunction because Pritchett directly solicited his clients in violation of her employment agreement. The record contains no evidence to support this allegation. Drawdy submitted the affidavit of one client who received a direct mail advertisement from Pritchett. Pritchett and a client of hers testified that the advertisement was sent to a mailing list of 2,500 potential new clients who met certain demographic criteria. While Pritchett scanned the list and removed five or six people she recognized to be Drawdy's clients, she missed one that was sent to a client of Drawdy's. This evidence does not establish that the trial court abused its discretion in determining that an injunction was not a vital necessity to prevent irreparable damage to Drawdy while the case is pending.

*Judgment affirmed. Miller and Ray, JJ., concur.*