**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2015**

# In the Court of Appeals of Georgia

A14A1616. GERGUIS et al. v. STATESBORO HMA MEDICAL   MI-083
GROUP, LLC.

MILLER, Judge.

After having sold their private practice to Statesboro HMA Medical Group ("HMA"), Drs. John and Angela Gerguis (collectively "the Doctors") left their employment with HMA. Thereafter, the Doctors sought an emergency injunction ordering HMA to provide them, and their new medical practice, with copies of all of the electronic patient medical records that they had previously sold to HMA. Following a hearing, the trial court issued an interlocutory injunction denying the Doctors' request for medical records for patients who had not specifically authorized the disclosure of their records, but ordering HMA to provide the Doctors with paper and electronic copies of all records for patients who had provided such

authorizations. The Doctors appeal, contending that the trial court erred: (1) in failing to allow the Doctors copies of all patient records pursuant to their contract with HMA; (2) in interpreting the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") to prohibit the Doctors from obtaining copies of all patient records; and (3) in permitting HMA to provide the Doctors with paper, rather than electronic, copies of records. For the reasons that follow, we affirm.

> An interlocutory injunction is a device used to maintain the status quo of the parties pending final adjudication of the case and should not be granted except in clear and urgent cases where there is a vital necessity to prevent a party from being damaged and left without a remedy.

(Citation and punctuation omitted.) *Drawdy CPA Services v. North GA CPA Services*, 320 Ga. App. 759, 760-761 (740 SE2d 712) (2013). We will not disturb a trial court's decision to grant or deny an interlocutory injunction absent a manifest abuse of discretion. See *Owens v. Ink Wizard Tattoos*, 272 Ga. 728 (533 SE2d 728) (2000).

The Doctors are primary care physicians practicing in Statesboro. Beginning in 2003, the Doctors and their staff used NextGen, an electronic medical records program, to create and maintain patient records. The Doctors sold their practice to HMA in 2011 and agreed to become HMA employees. As part of the sale, the

2

Doctors transferred to HMA the electronic patient records that they and their staff had created. The Doctors continued to use NextGen to create and maintain medical records during their employment with HMA. The Doctors' NextGen system contained medical records for approximately 5,000 patients.

The employment agreements between the Doctors and HMA specifically provided that HMA would be "the custodian and owner of all patient records;" the records would remain on HMA property at all times during and after the Doctors' employment; and the Doctors would not remove the records from their office or the hospital without HMA's prior approval. The Doctors and HMA also entered into a Medical Records Custody Agreement (the "Agreement"), which provided that:

> HMA will own and retain custody of the Medical Records and agrees to maintain such Medical Records in accordance with applicable standards and laws of the State in which the Medical Records are located or other such laws as may be applicable, including, but not limited to [HIPAA] . . . . Notwithstanding the foregoing, [Dr. John Gerguis] shall have the right of access to all of the Medical Records, at reasonable times and upon reasonable notice to HMA, and a right to receive copies of same for clinical, legal, financial, and/or any other appropriate reasons as permitted by applicable law.

By June 2013, the Doctors were unhappy with HMA regarding staffing, compensation, and payment for office services and supplies. On August 1, 2013, the Doctors terminated their employment with HMA effective August 6. Prior to the effective date of the Doctors' termination, HMA asked the Doctors whether they had in place a paper record system or parallel electronic medical record system to assure that they would have access to patient records once they were disconnected from HMA's computer system. The parties also discussed the possibility of the Doctors buying back the medical practice assets from HMA, but the Doctors discontinued negotiations. Upon termination of the Doctors' employment, HMA denied the Doctors access to NextGen.

The Doctors thereafter opened their new practice, South Georgia Family Medicine Associates, P. C. HMA notified approximately 3,500 patients that the Doctors had left HMA and offered the patients three choices: they could remain at HMA and see a different doctor; they could transfer to the Doctors' new practice and fill out an enclosed authorization form to release their medical records; or they could transfer to another doctor's practice and fill out an enclosed authorization to release their medical records.

A small number of patients requested that their records be sent to another doctor. Many patients requested that HMA furnish their records to the Doctors. Through counsel, HMA informed the Doctors in September 2013 that it would provide access to patient medical records in medical emergencies, or where there was an immediate or critical need to do so. HMA also began providing paper copies of records for patients who had submitted authorizations. The paper patient records provided by HMA were voluminous, and different patients' records were sometimes mixed together. The Doctors offered to pay to set up a NextGen portal so that they could access the patient records electronically and HMA agreed to this proposal, but the Doctors later determined that the plan was not feasible.[1]

The Doctors and their new practice then filed suit for breach of contract and attorney fees. They sought injunctive relief to allow them access to, and electronic copies of, the records for not only the patients who had authorized HMA to furnish their records to the Doctors, but for all patients in the NextGen system. HMA counter-claimed for breach of contract and attorney fees. In support of their suit, the Doctors and their staff filed affidavits setting forth numerous instances in which

---

[1] The record indicates that NextGen could set up such a portal, that it would provide access to all the relevant records, and that it would cost between $20,000 and $25,000.

records were not received from HMA or were not complete, resulting in the Doctors being unable to schedule procedures and otherwise interfering with patient care.

1. The Doctors contend that, pursuant to the Agreement, they are entitled to records for all patients in the NextGen system – including those patients who have not submitted written authorizations – because the failure to provide such records could interfere with patient care. Specifically, the Doctors argue that, under the Agreement, they are permitted to maintain records for patients whom they have treated previously, even if the patient does not currently need medical treatment. We disagree.

> In Georgia, the construction of a contract involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the contract language is clear and unambiguous. If it is, the trial court simply enforces the contract according to its clear terms; the contract alone is looked to for meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

(Citation omitted.) *McKinley v. Coliseum Health Group, LLC*, 308 Ga. App. 768, 770 (1) (708 SE2d 682) (2011); see also OCGA § 13-2-1.

6

Personal medical records are protected by Georgia's constitutional right to privacy and cannot be disclosed without the patient's consent unless disclosure is otherwise required by law. See *Ussery v. Children's Healthcare of Atlanta*, 289 Ga. App. 255, 269 (4) (656 SE2d 882) (2008).

Here, a review of the employment agreements between the Doctors and HMA clearly shows that HMA purchased the medical records as part of their purchase of the Doctors' practice in 2011. The Agreement also clearly provides that HMA would have custody and physical possession of the patient records; HMA would maintain and preserve the records in accordance with all laws, including HIPAA; and the Doctors were entitled to access the records and to copies of patient medical records "for clinical, legal, financial, and/or any other appropriate reasons *as permitted by applicable law.*" (Emphasis supplied.)

Under the Agreement, then, HMA owns the records. Accordingly, HMA may only disclose patient records in accordance with applicable law. Pursuant to HIPAA, HMA may only disclose medical records where the patient has provided a signed authorization.[2] See 45 CFR § 164.508 (a) (1), (c). Likewise, Georgia law permits

---

[2] A valid authorization under HIPAA identifies the records to be disclosed, as well as to whom the disclosure is to be made, and is signed by the patient. 45 CFR § 164.508 (c) (1). "Disclosure" is broadly defined under HIPAA to include "the release,

providers to furnish copies of patient medical records only upon a written request from the patient. See OCGA § 31-33-2 (a) (2). Consequently, even if a patient has previously seen the Doctors and may see the Doctors again at some time in the future, applicable law does not permit HMA, as the owner and custodian of the records, to disclose the records to the Doctors without a written patient authorization. Thus, the trial court did not abuse its discretion in denying the Doctors copies of records in the absence of patient authorizations.

2. The Doctors nonetheless argue, in several related enumerations of error, that HIPAA does not prohibit the disclosure by HMA of patient medical records to them. We disagree.

As set forth above, pursuant to HIPAA, a health care provider may not use or disclose protected health information without a valid patient authorization. See 45 CFR § 164.508 (a) (1), (c); see also 45 CFR § 160.103; *Moreland v. Austin*, 284 Ga. 730, 731 (670 SE2d 68) (2008) (HIPAA ensures the privacy of patients' medical information). The Doctors argue that HIPAA does not prevent them from accessing the records because HIPAA defines "disclosure" as the release of records to one

---

transfer, provision of access to, or divulging in any manner of information outside the entity holding the information." 45 CFR § 160.103.

"outside of the entity holding the information" (45 CFR § 160.103) and they are not an outside entity of HMA since, by virtue of the Agreement, HMA was merely holding the records for their benefit. However, nothing in the Agreement suggests that the Doctors would continue to have access to patient records after they left HMA, except in accordance with applicable law.

> Under HIPAA, "treatment" is defined to include:
>
> the provision, coordination, or management of health care and related services by one or more health care providers, including the coordination or management of health care by a health care provider with a third party; consultation between health care providers relating to a patient; or the referral of a patient for health care from one health care provider to another.

45 CFR § 164.501. The Doctors argue that "treatment" should be interpreted broadly to include maintaining former patients' medical records and insist that HIPAA does not prohibit their access to patient records because they are ethically bound to keep patient records confidential. Pretermitting whether HIPAA should be interpreted as the Doctors suggest, the Agreement clearly provides that HMA, not the Doctors, will maintain the records at issue.

3. Finally, the Doctors contend that the trial court erred in not ordering HMA to provide them with electronic copies of patient records, and by permitting HMA to provide paper copies instead. This argument is without merit, as the trial court's injunction provided that the Doctors were entitled to both paper *and* electronic copies of patient medical records, so long as the patients had authorized HMA to release their records. HMA should be providing electronic copies to the Doctors in accordance with the trial court's order.

*Judgment affirmed. Doyle, P. J., and Dillard, J., concur*.